

IN THE U.S. DISTRICT COURT
FOR THE MIDDLE DISTRICT
OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **NORRIS W. GREEN**, | ◊ | |
| | ◊ | |
| Plaintiff, | ◊ | **CIVIL ACTION NO.** |
| | ◊ | |
| **STATE BOARD OF MEDICAL EXAMINERS**, et al. | ◊ | **2:18-CV-00719-GMB** |
| | ◊ | |
| Defendants. | ◊ | |
| | ◊ | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS FOR MORE DEFINITE STATEMENT MOTIONS #55 AND #56

Plaintiff, Norris W. Green, submits the following response to the Plaintiffs' Motions for More Definite Statement filed on October, 26, 2018.

(1)  Fifteen of the most highly educated, highly trained, highly skilled, and top litigators, some Alabama "super lawyers" are asking this Court to accept their specious argument that they don't have a clue about the Plaintiff's First Amended Complaint, referred to as FAC, filed against their clients who they refer to as Agency Defendants (Defendants and Agency Defendants are used interchangeably below).

(2)  Sadly, if you repeat a false statement often enough and it becomes the "truth," is a law of propaganda often attributed to the Nazi Joseph Goebbels.  Among psychologists something like this is known as the "illusion of truth" effect.  Defendants have propagated the phrase "shotgun complaint" and "shotgun pleading" at least 19 times in the course of seven pages of Motion #55, apparently convinced the Court will have no choice but to grant their motions.  As to the absence of evidence about which the Defendants complain, the Federal Rules of Civil Procedure prohibit

discovery prior to a Rule 26 (f) Conference, so yes, some of the evidence against their clients remains to be presented (we are not at the summary judgment phase of this civil action), but the causes of action are clearly stated, and the elements of each cause of action are carefully pleaded, separated and distinguished by large headings, contrary to the Defendants' assertion that there are hidden causes of action lurking unidentifiably throughout the FAC.  If the causes of action are clearly labeled with large headings, how can the Defendants claim they are unable to discern what causes of action the Plaintiff has pleaded, or which specific Agency Defendants are charged with each cause of action, notwithstanding that each separate cause of action clearly identifies which Agency Defendants are charged with liability under each such cause of action for the specific reasons stated throughout the FAC.  Furthermore, for the evidence of everything supplied to the Board of Censors and discussed on September 20, 2017, and the sources thereof, and the evidence supplied to the State Board of Medical Examiners and discussed on September 20, 2017, and the sources thereof, that evidence will be fully supplied with the taking of one single deposition of someone present in both of the September 20, 2017 meetings, as soon as the Court allows discovery to proceed.  There is no requirement that all or a substantial amount of evidence against every defendant be included in the complaint, reasonable inferences are allowed to meet the pleading requirements, and the FAC states the cause of action against the members of the Board of Censors. Brown v. Benefield, 757 F. Supp. 2d 1165 (M. D. Ala. 2010).  Furthermore, Defendant's Motion #56 primarily attacks the failure of the Plaintiff to state what was discussed in a privately held Alabama Medical Association meeting without their denying the subject matter was ever discussed. The Plaintiff can assure this Court that upon completion of the one single deposition referred to above, every word, every email, and every text message circulated by participants in this conspiratorial wrongdoing will be fully revealed.

(3)   However, before the substance of Motions #55 and #56 are further discussed, the Plaintiff needs to address a serious concern with the timing of Defendants' motions.  This civil action was filed on August 8, 2018, and was "accepted" by the Court on August 15, 2018.  On that same day, August 15, Plaintiff's counsel emailed the primary defense counsel and asked if counsel would appreciate a copy of the complaint, and a copy was immediately delivered.  A few days later one of the new attorneys from Birmingham, representing one of the recently served Defendants, called asking about an extension because the attorney was leaving the country for two weeks.  The attorney was immediately told there would not be any problem in agreeing to a reasonable extension. A few days thereafter, Plaintiff's counsel was approached about a formal consent to extend the time until October 28, 2018, more than 52 days after a response was due from the earliest served Defendants.  The consent motion endorsed by all parties clearly stated it was being filed without a waiver of any jurisdictional or immunity defenses, and was to extend the time for filing a "responsive pleading."  (1) A motion for more definite statement is not a "responsive pleading" nor do Defendants' motions address immunity or jurisdictional issues. (2) For defense counsel to sit on the FAC for two months without communicating any questions they say they have about the FAC, and then upon the tolling of the agreed to deadline, suddenly claim they need the FAC amended, otherwise they can not respond, borders on a violation of FRCP Rule 11(b)(1).  The delay at a minimum violates the expressed terms of the parties' consent extension, and appears to be a violation of the General Order of the U. S. District Court for the Middle District of Alabama, dated January 8, 1999, and entitled Standards for Professional Conduct, Rule #6.  It is hard to ignore the expectancy that Motions #55 and #56 are but the first salvo of many motions the Defendants intend to file that will ultimately delay the finality of the plaintiff's civil action.  For example, the Defendants have until November 16 to file their reply, the Court will then deny or grant their

motion.  Either way, the Defendants will be given additional time to file their next non-responsive pleading far beyond their original 21 days.  Defendants will then file a multiplicity of Rule 12 motions attacking federal jurisdiction and/or arguing their clients are entitled to immunity.  Once those issues are decided, they will have additional time to file a responsive pleading, and their responsive pleadings will be followed by motions for summary judgment, and by the time those motions are resolved, it will be 2020, and the wrongdoers will be celebrating their dilatory achievements.  Based solely upon the unnecessary and inexcusable delay in filing Motions #55 and #56, the Motions should be denied.

(4)  The plaintiff filed a fifty-two page FAC.  It does not contain an array of disaggregate facts unconnected to the named Defendants, it does not contain rambling recitations that are not material to the causes of action, and it does not require the U. S. District Court to sift through the facts and decide for itself which factual allegations relate to and are material to which cause of action.  The plaintiff presented a precise and chronological story of the events leading up to his dismissal, not a rambling or incoherent story.  The Agency Defendants, aside from their expected denial, know exactly what they are being charged with because the facts are truthfully stated; and, the intentional and malicious conspiracy is well known to the authors and conspirators, because the Defendants were either active operatives or grossly complicit in allowing the false allegations to be entertained at board level to the point of dismissing the Plaintiff.  The FAC contains the names of Defendants, with dates, places, statements made, and conversations that occurred.  In other words the FAC provides who, what, when and where the events occurred in a precise and orderly chronological order.  The type of wrongdoing engaged in by Defendants is by definition difficult to prove when the parties are conspiring among themselves, as in this case, against the former executive director.  Defense counsel complains Defendants have not been notified of any individual

wrongs, complaining they have been lumped together and charged as a group.  Such is a conveniently gross misrepresentation of the contents of the FAC.  It was necessary to incorporate the whole story into each cause of action, because all of the Defendants' defamatory and derogatory actions are interrelated, occur over the course of a few weeks, and it is impractical to isolate a few facts, insert those isolated facts into separate causes of action, only then to have the Defendants complain those isolated facts are ambiguous.

(5)  On Page 6 of motion #55, defense counsel complains the plaintiff failed to acknowledge Defendants Shaner and Hunter had no authority to make employment decisions.  There is no element of intentional tortuous interference requiring the interfering parties have authority to make employment decisions.  As stated in the FAC and itemized as to what was false, Defendants Shaner and Hunter, (1) provided false information to board members and one non-board member over the weekend prior to the dismissal of the plaintiff.  (2) Defendants Shaner and Hunter provided the false information that was used at the privately held Board of Censors meeting on the morning of September 20, 2017 conducted before strangers.  (3) Defendants Shaner and Hunter falsely testified before the Board of Medical Examiners on the afternoon of September 20, 2017, at which time a stranger was present.  (4)  Defendants Shaner and Hunter engaged in a two hour meeting with Alabama Medical Association lobbyists Whittaker and Corley to discuss among other topics strategy for getting rid of the plaintiff.  Furthermore, since the dismissal of the Plaintiff, at least one prominent attorney has reported that he understood that Defendant Hunter was responsible for "blowing the whistle on the Plaintiff" (tortuously implying there was something improper that needed to be made public, when there was no such improprieties) and was thereby responsible for the dismissal of the Plaintiff. Each of Defendants' false allegations against the Plaintiff are itemized and listed specifically or inferentially in the FAC.

(6)  As for the culpability of board members as a group, the Defendants readily admit on Page 2 of Motion #56, that the Alabama Medical Association Board of Censors was not the Plaintiff's employer.  That admitted fact begs the question, why then did the Board of Censors go into an executive session on the morning of September 20, 2017, and expend all of their meeting time entertaining and discussing false and defamatory allegations about the plaintiff, and thereby violate the privacy of the Plaintiff when the Alabama Medical Association admittedly had absolutely nothing to do with the Plaintiff's employment?  Did any board member stop the discussion, voice an objection, or ask to halt the improper proceedings?  Did any board member walk out in protest in order to disassociate themselves from the wrongful conduct of the Board of Censors that day? The Board of Censors is a legally constituted arm of the Alabama Medical Association, and such as an entity, as a group, individually and collectively, are charged with a breach of the privacy of the Plaintiff, and such is clearly stated in the FAC, as amended, so what additional clarity is required?

(7)  The Defendants at Page 2 of Motion #55 cite <u>Swierkiewicz v. Sorema</u> N.A., 534 U.S. 506 (2006), in support of their motion, but in doing so, fail to point out that the Supreme Court actually reinstated that discrimination lawsuit the 2d Circuit of Appeals had earlier dismissed, and the 2d Circuit and the Defendants were found at fault for erroneously deciding the complaint failed to give notice to the defendant employer of what the plaintiff was alleging.

(8)  Next at Page 2 of Motion #55, the Defendants cite <u>Cruz v. Cinram Int'l, Inc.</u>, 574 F. Supp. 2d 1227 (ND Ala. 2008), wherein the Court stated:

> Typically, claims asserted in civil cases must be pled in conformance with FED. R. CIV. P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," "in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" FED. R. CIV. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

**A RICO claim, however, is not a "typical" civil claim** that may be sufficiently pled by following Rule 8. As the court explained in Taylor v. Bear Stearns & Co., 572 F.Supp. 667, 682 (N.D.Ga. 1983). (emphasis added).there are many sound reasons for requiring that, like fraud, [RICO claims] must be pled with particularity. First, the mere invocation of the statute has such an in terrorem effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute. Second, the concepts within the statute are so nebulous that if the cause of action were only generally pled, a defendant [**8] would have no effective notice of a claim showing that the pleader is entitled to relief. Therefore, the court believes [*1231] that it is appropriate to require that RICO be pled with the same particularity that is required in the pleading of fraud. (emphasis added).

(9)  So here the Defendants are asking Alabama Middle District to adopt the findings of a Rico case from the Alabama Northern District and impose a heightened pleading standard on the Plaintiff that the Plaintiff isn't required by law to follow.

(10)  Next at Page 2 of Motion #55 Defendants cite Mt. Hebron Dist. Missionary Baptist Ass'n of AL v. Hartford Co., 2017 U.S. Dist. LEXIS, (M. D. of Ala. 2017): 3:16-CV-00658-CDL-GMB, but do not include any reference to an actual quotation or ruling from the case.  Furthermore, that case does not involve a motion for more definite statement.

(11)  Next at Page 3, Defendants cite Lowe v. Delta Air Lines Inc., 730 Fed. Appx. 724 (11th Cir. 2018.  In that case the Court stated:

Here, the District Court would have to spend many hours sorting, separating, and matching up the various factual allegations and claims, and would have to attempt a full-scale rewrite of Lowe's complaint in order to glean some cognizable basis for relief from it. Delta would have to do the same in an attempt to respond to its allegations.

In addition to its unmanageability, Lowe's complaint lacked specificity. As the Magistrate Judge observed, Lowe's allegations were generalized and conclusory throughout her complaint. While we do not here discuss the Magistrate Judge's thorough review of every claim, several examples are illustrative. For one, Lowe's ERISA Interference count alleged in a conclusory manner that Delta's changing of her leave status from "NWA Disability Medical Leave" to "Approved/Unapproved Medical Leave of Absence" was "without merit" and interfered with her "rights to ERISA benefits including and not limited to dental, medical, vision, and other

unknown retiree benefits." <u>But Lowe never specified those benefits in any detail, alleged that she previously received them, or specified why Delta's classification of her leave status was "without merit" or otherwise improper</u>. (emphasis added).

(12)  The Plaintiff in his FAC before the Middle District explains exactly why the false representations of each of the Defendants are actionable, and why those Defendants responsible for due process failed to afford the Plaintiff the most basic of fundamental due process.

(13)  Next at Page 2 of Motion #55, Defendants cite, <u>Jackson v. Bank of Am., N.A.</u>, 898 F.3d 1348(11th Cir 2018), a case involving what the 11th Circuit labeled a scheme and abuse of process, where in stated:

> This appeal involves an <u>abuse of process engineered to delay or prevent execution of a foreclosure judgment on a residence</u> and the consequent eviction of its occupants. The homeowners' counsel effectuated this scheme by filing a multi-count, <u>incomprehensible complaint</u> that flouted the Federal Rules of Civil Procedure and this Circuit's well-established precedent. The District Court gave counsel an opportunity to file an amended complaint that comported with the requirements of the Federal Rules of Civil Procedure to the text of the note Counsel amended the complaint. He made no effort to correct its deficiencies, however, choosing to stand [**2] on his deficient pleading. The District Court nonetheless accepted the amended complaint, going to great lengths to sort it out.
>
> After spending fifty-four pages unpacking the pleading just to determine whether the amended complaint presented a cognizable basis for relief, the District Court dismissed the case with prejudice for failure to state a claim.(emphasis added).

(14)  How does an intentional scheme designed to thwart a real estate foreclosure have any relevance to the a case brought by a former executive director against people who dismissed him based upon intentionally malicious and false grounds?

(15)  Next at Page 3 of Motion #55 the Defendants cite, <u>Davis v. Coca-Cola Bottling Co. Consol</u>., 516 F.3d 955 (11th Cir. 2008), wherein the Court said in discussing the pleadings:

> No competent lawyer - whether skilled in Title VII litigation or not, could compose an answer to these sweeping and multifaceted acts of discrimination that would be in keeping with what the framers of the Rules envisioned in fashioning Rule 8(b). Yet, CCBCC's attorneys framed one. They used the same shotgun strategy plaintiffs had employed.  Their answer contained fourteen defenses. The first defense

responded to the complaint paragraph by paragraph, admitting or denying the allegations thereof. The second through the fourteenth defenses were affirmative defenses, and except for the seventh defense, consisted of only one sentence. These affirmative defenses did not respond to specific causes of action, because the drafter of the answer could not identify the specific causes of action each named plaintiff was purporting to allege. Consequently, the affirmative defenses referred to none of these plaintiffs by name.

Faced with these pleadings, how the district court could have made heads or tails out of plaintiffs' allegations, and which affirmative defenses applied to which causes of action, is beyond us. It took several rounds of pleadings, namely CCBCC's Rule 12(c) motions and the parties' memoranda (dealing with those motions and responding to court orders requesting briefing on other points) for the court even to begin the process of narrowing the issues. In the end, as our preceding analysis of plaintiffs' arguments discloses, the court missed some claims altogether. Plaintiffs could have brought this to the court's attention via a motion to alter or amend judgment, but chose, instead, to stand pat and leave the matter to us. (Emphasis added)

(16)  So with Coca-Cola we have a convoluted "class action" employment discrimination case wherein both sides engaged in unidentifiable claims and defenses that Defendants ask this Court to believe has controlling application for their motion for more definite statement.

(17)  Next at Page 3 of Motion #55, the Defendants cite Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273 (11th Cir. 2006), where the Court stated:

Section § 11 of the Securities Act of 1933, 15 U.S.C.S. § 77k(a), or a § 12(a)(2) of the Act, 15 U.S.C.S. § 77l(a)(2), claim must be pled with particularity when the facts underlying the misrepresentation at stake in the claim are said to be part of a fraud claim, as alleged elsewhere in the complaint. It is not enough to claim that alternative pleading saves the nonfraud claims from making an allegation of fraud because the risk to the defendant's reputation is not protected. Nor is it enough to present a general disclaimer in an attempt to immunize the nonfraud claims from the Fed. R. Civ. P. 9 requirements. The purpose of the rule is to protect a defendant's good will and reputation when that defendant's conduct is alleged to be fraudulent.

(18)  So once again we find the Defendants citing a case involving a complaint that is required by a federal statute to be pled with a high level of specificity, while no Section §11 Securities Act heightened requirement of pleading is applicable in the case before this Court.

(19)  Next the Defendants at Page 3 of Motion #55 cite <u>Anderson v. District Bd. of Trustees</u> <u>of Cent. Fla. Community College</u>, 77 F.3d 364 (11th Cir 1996).  While the case appears to be the only one cited that has some relevancy to the defendant's motion for more definite statement, the complaint is no longer available online, and there isn't enough discussion of the factual content of the complaint to know if the complaint has any similarities to the FAC filed in the case before the Magistrate.  What is found in the decision is the following finding by the Court:

> Anderson's complaint contains six counts. The first twenty-four paragraphs of the complaint contain allegations of fact that are adopted in full by all six counts. Count one begins with paragraph 25 of the complaint; count two with paragraph 34; count three with paragraph 43; count four with paragraph 51; count five with paragraph 59; and count six with paragraph 61. <u>Each count contains factual allegations in addition to those set out in the first twenty-four paragraphs; each count also adopts the allegations of all preceding counts.</u> Consequently, allegations of fact that may be material to a determination of count one, but not count four, are nonetheless made a part of count four. (emphasis added).

(20)  It is true the present FAC that is before the Court presents a chronological story, with dates, facts, names, and locations, and incorporates those facts in each of the delineated causes of action, however, anyone reading the FAC can reasonably and easily know what each defendant is charged with, including in those instances where the board members are collectively and individually made Defendants.

(21)  Next at Page 3 of Motion #55 the Defendants cite, <u>Byrne v. Nezhat</u>, 261 F.3d 1075, (11th Cir. 2001) another RICO case imposing strict pleading requirements on the plaintiff in that case, but not a pleading requirement of the Plaintiff presently before the Court.  Why do the Defendants insist on persuading this Court to use non-applicable RICO cases, and then follow that citation with an insinuation that the Plaintiff's FAC might open the Plaintiff's attorney as "perpetrator" to a charge of criminal contempt which appears to asserted in direct violation of the

previously cited General Order entitled <u>Standards for Professional Conduct</u>, Rule #4?  On that basis

alone, the Defendant's Motion should be denied.

(23)  Next at Page 4 of Motion #55, the Defendants cite, <u>Paylor v. Hartford Fire Ins. Co.</u>, 748

F.3d 1117 (11th Cir 2014),  but that appellate ruling simply upheld the summary judgement granted

for the Defendants in the District Court because the plaintiff had knowingly and voluntarily executed

a severance agreement.  In so holding the 11th Circuit said:

> In this case, Paylor's counsel conceded outright at oral argument that Paylor's
> complaint "doesn't meet the [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.
> 1955, 167 L. Ed. 2d 929 (2007)] standard." <u>And indeed, both the complaint and the</u>
> <u>amended complaint are almost totally useless.</u> The reader learns that there is a statute
> called the Family Medical Leave Act, and hears in Counts II and III the allegation
> that "[Hartford] violated the Family Medical Leave Act by interfering with and/or
> denying [Paylor's] leave under the act and by ultimately terminating [Paylor]," and
> that "[Hartford] has violated the FMLA by retaliating against [Paylor] for [Paylor's]
> exercising and/or attempting to exercise [her] rights under the Family Medical Leave
> Act," but that is all the reader learns. (emphasis added).

(24)  Throughout the FAC, as amended, the Plaintiff has clearly identified who, what, when

and where, and how each Defendant is involved, and what causes of action for which they are being

held responsible.  Notwithstanding the arguments of Defendants, there is no ambiguity that prevents

the Defendants from knowing exactly what wrongs they are charged with, when they did it, how

they did it, and for what purpose.

(25)  Next at Page 4 of Motion #55, the Defendants cite, <u>Ambrosia Coal & Constr. Co. v.</u>

<u>Morales</u>, 482 F.3d 1309 (11th Cir. 2007), another RICO case for which the Defendants are again

asking this Court to adopt an inapplicable heightened pleading requirement.

(26)  Next at Page 4 of Motion #55, the Defendants cite another case under the Securities and

Exchange Act of 1934 <u>Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.</u>, 305 F.3d

1293 (11th Cir 2002) where once again this Court is asked to apply a case involving federal securities

laws, but what aspects of this case have any application to the FAC?

Here, the pleader refers to "SIF's trading accounts" with LIT as though their existence was fact. Nowhere else in the pleading, however, does the pleader allege that SIF had opened such accounts with LIT. Rather, Count IV states that ETJ was the party with the account(s) at LIT. The second sentence of the paragraph states, again as fact, that the "[Pledged Securities] had been pledged to SIF as security for the[] members' individual investments in SIF." This statement leads to more questions than answers. One must ask, why would the members pledge securities to SIF? Was SIF advancing funds in their behalf? Presumably - though the pledge does not tell us - SIF paid ETJ cash (or its equivalent) for the options it asked ETJ to purchase for its account, since the law would not permit ETJ to finance SIF's purchases. Material facts that detail the exact nature of the relationship between the individual plaintiffs, SIF, ETJ, and LIT are conspicuously absent.

The passive voice leads to still more questions: Who "required" the members of SIF "to pledge certain assets . . . as collateral for SIF's trading accounts with LIT"? Was it LIT, ETJ, or SIF itself? To whom were the pledges made - were they made to ETJ or to LIT? And on what conditions were the pledges made; in other words, what event(s) would trigger the pledgee's right to seize the collateral? As a result of this passive narrative, the pleader does not make explicit - perhaps by a conscious, tactical choice - whose debt to LIT was being secured by the Members' pledges. We glean the identity of that obligation from a consideration of the Count IV allegations as a whole: ETJ was LIT's debtor and the Members' securities were pledged to secure ETJ obligation(s). The terms of the pledges are not clear from Count IV's allegations, but, based on the nature of the claims made by plaintiffs, one must assume that LIT sold the pledged securities in accordance with the terms stated in the pledge instruments. If LIT seized and sold the securities contrary to the terms expressed in the pledge instruments, one would expect the pleader to include in the complaint a count which alleged that LIT had done so. Moreover, <u>one would expect the pleader to have attached to the complaint copies of the pledge instruments</u>. (emphasis added).

(27)  Next at Page 4 of Motion #55, the Defendants cite <u>Lane v. Capital Acquisitions & Mgmt. Co.</u>, (S.D. FLA 2006) where the Court said,

While notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the <u>material elements</u> necessary to sustain a recovery under some viable legal theory.'" Roe v. Aware Woman Center for Choice, Inc. 253 F.3d 678, 683 (11th Cir. 2001) (citing In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981)). (emphasis added).

(28)  A reading of the case reveals the Court was dealing with corporate Defendants, and subsidiary corporate Defendants, and the Plaintiffs were seeking to pierce the corporate veil.  There

the Court was requiring the Plaintiffs to distinguish which allegations applied to each corporate defendant so that a separate determination of piercing the corporate veil could be evaluated by the Court as to each corporate entity.

(29)  Finally, at Page 7 of Motion #55 the Defendants cite Byrd v. Buckner, 2018 U.S. Dist. LEXIS 151471 (M.D. Ala. 2018) again asking the Court to accept this case as guidance for how to deal with Plaintiff's FAC, when in fact, the entire Byrd case involves the heightened pleading requirements applicable to a plaintiff seeking a preliminary injunction.  In the present case, the Plaintiff is not seeking a preliminary injunction.

(30)  The 11th Circuit has defined four types of complaints that come within the definition of "shotgun."  McCall v. Bank of Am., N.A. 2016 , U. S. Dist. Lexis 130998 (M.D. ALA 2016). Three of those definitions are not in play.  One of the definitions is where a Plaintiff pleads multiple rambling allegations and makes no effort to connect those allegations with specific Defendants.  The factual allegations in the FAC are not rambling, they follow an orderly chronological order.  Each factual allegation is connected with one or more identified Defendants.  Each of the five causes of action are separately labeled and highly distinguished.  The Defendants that come with a specific cause of action are named based upon the factual allegations for which they are identified as having committed.  The Defendants complain their clients can not possibly know which allegations support specific claims, notwithstanding that the Plaintiff identified every false and malicious statement made in the case or inferentially made, and/or identified the subject matter of those statements, when and where.  Has the Plaintiff listed every maliciously false statement made by the Defendants?  It is well known that on September 20, 2017, certain board members and non-board members propagated and discussed the maliciously false information on the morning of September 20, 2017 at the Alabama Medical Association Board of Censors meeting, and again that afternoon at the State

Board of Medical Examiners meeting. At no time did any of the Defendants in attendance at those meetings question the integrity, reliability, and truthfulness of the information they were complicit in promoting, discussing, and using to terminate the Plaintiff. One of the main reasons for the unprofessional antics of the Defendants in attendance is because the overwhelming majority of the board members routinely and blindly accept the recommendations of defendant Jerome Harrison, M. D., and never openly question any of his actions regardless of any glaring and apparent impropriety. If Defendant Jerome Harrison, M. D. wanted the Plaintiff terminated from his job, and he did, there were more than enough board members who Harrison could count on to join whatever defendant Jerome Harrison, M. D., wanted to do, with or without evidence, and that is exactly what happened on September 20, 2017.

(31) In the case of Sbarbaro v. Yacht Sales Int'l, Inc., 1995 U.S. Dist. LEXIS 2243, (S.D. FL 1995) the Court dealt with a multitude of 12 (b) motions to dismiss and motions for more definite statement, and said:

> Convenience additionally argues that the Plaintiffs claims for express warranty should be dismissed because Plaintiffs failed to allege the specific portions of the express warranty upon which they rely and have failed to attach a copy of the express warranty to the Amended Complaint. This argument is more in the nature of a motion for more definite statement than a motion to dismiss. The liberal pleading rules of the federal system do not require further specificity concerning the Plaintiffs' express warranty claims at this time because the allegations of the Amended Complaint are sufficient to put Convenience on notice of the claim and to enable it to defend and frame a response.

(32) In the case of Petralia v. Centennial Life Ins. Co., 1994 U.S. Dist. LEXIS 4832, (M.D. FLA 1994), the Defendants were complaining it was "impossible to frame a response" to the Plaintiff's complaint. In denying the Defendants' Motion for More Definite Statement the Court said:

> Although it is granted that Plaintiff could have explained the new caption of the case in her Second Amended Complaint, this Court does not find it so vague or

ambiguous that a responsive pleading cannot reasonably be framed. The Defendant knows that it is a party to the suit. It knows the basic claims and issues in the case. This Court feels that this is adequate information with which to frame a responsive pleading. Furthermore, Plaintiff has now explained in her Response to Defendant's Motion to Dismiss why the case is so captioned. Centennial has apparently assumed the rights and liabilities under the polices issued by Continental.

Plaintiff responds to Defendant's Motion for a More Definite Statement by saying that without further discovery, it is impossible for her to detail the exact business relationship between the companies. It is reasonable to include both companies in the suit when Plaintiff is not sure of the exact business relationship between them. This Court feels that these problems can be taken care of in discovery. Apparently, Plaintiff has already requested that Defendant produce a complete copy of the insurance policy which is the subject of the controversy; a request that Defendant has yet to respond to. Through discovery, Plaintiff and Defendant can find out more about exactly which company is now responsible for her policy. Therefore, Defendant's Motion for a More Definite Statement is DENIED. (emphasis added).

(33)  In the case of Abrams v. Ciba Specialty Chems. Corp., 2008 U.S. Dist. LEXIS 68897

(S. D. ALA 2008), the following discussion and ruling is found:

In their Motion for More Definite Statement and to Dismiss, defendants proffer three objections to plaintiffs' pleading. First, they contend that the First Amended Complaint is **a shotgun-style pleading** that violates fundamental pleading requirements identified in the Federal Rules of Civil Procedure and binding appellate precedent. Second, they contend that plaintiffs' fraud and misrepresentation claims lack the requisite particularity required under the Federal Rules of Civil Procedure and must therefore be dismissed. Third, defendants contend that plaintiffs' RICO allegations are inadequately pleaded with respect to proximate cause and predicate acts. Plaintiffs oppose defendants' Rule 12 Motion and fire back with their own Motion for Default contending that defendants should be defaulted for intentionally failing to answer either the Complaint or the First Amended Complaint in a timely manner.

As the formidable standard set forth in Rule 12(e) suggests, "[m]otions for more definite statement are viewed with disfavor and are rarely granted." Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp.2d 1218, 1221 (S.D. Ala. 2005). "The motion is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." Id. (citation omitted); see also S.E.C. v. Digital Lightwave, Inc., 196 F.R.D. 698, 700 (M.D. Fla. 2000) (touchstone for Rule 12(e) relief is unintelligibility, not lack of detail). "**A motion for more definite statement is not a substitute for discovery.**" Fathom, 352 F. Supp.2d at 1221-22. [**A] motion for a more definite statement must be denied if the complaint attacked thereby, considered as a whole, fairly gives notice of the claim or claims asserted therein so as to permit [*15] the filing of**

**a responsive answer.**" Herman v. Continental Grain Co., 80 F. Supp.2d 1290, 1297 (M.D. Ala. 2000). Indeed, "[a] motion for a more definite statement will only be required when the pleading is so vague or ambiguous that the opposing party cannot respond, **even with a simple denial**, in good faith or without prejudice to himself." Fathom, 352 F. Supp.2d at 1221 (citation omitted); see also BB In Technology Co. v. JAF, LLC, 242 F.R.D. 632, 640 (S.D. Fla. 2007) (similar).

In short, then, applying the stringent standards for this disfavored procedural remedy to the case at bar, the Court finds that defendants are not entitled to a more definite statement. A fair review of the First Amended Complaint reveals that, while it may be imprecise in certain respects, it is not unintelligible. Nothing on the face of the First Amended Complaint supports a finding that its allegations are so vague or ambiguous that defendants are unable to respond, even with a simple denial, in good faith or without prejudice to themselves. Indeed, defendants' own filings in support of their Rule 12(b) Motion reveal that they understand, at least in general terms, the nature of the claims against them. This is simply not a case in which a defendant [*29] is unable to respond to an unintelligible pleading; to the contrary, defendants clearly grasp the claims against them well enough to file an answer. **Defendants' Rule 12(e) motion is denied.** (emphasis added),

(34)  In the case of Chilton Water Auth. v. Shell Oil Co., 1999 U.S. Dist. LEXIS 21595

(M.D. ALA 1999), the court said:

Second, Shell argues that the complaint fails to state whether such communications were actually made to plaintiffs. **The court again disagrees**. Plaintiffs allege that Shell "expressly represented to the public, including Plaintiffs, that the polybutylene tubing had been extensively tested and was suitable for use as water pipe in normal potable water." Furthermore, plaintiffs imply throughout their complaint that Shell communicated the alleged misrepresentations to plaintiffs themselves. For instance, plaintiffs allege that Shell made false representations upon which it intended or could expect plaintiffs to rely and that plaintiffs did in fact rely on these representations to their detriment.

Third, Shell argues that plaintiffs have not stated the dates and times of the alleged misrepresentations. Shell is correct. Nevertheless, plaintiffs' failure to plead these particulars is alone not sufficient to defeat particularity. See Durham, 847 F.2d at 1512. HN5 As long as it otherwise provides a modest degree of precision and substantiation to plaintiffs' fraud claim, the compliant does not need to state the date, time, or place of the allegedly fraudulent conduct. See id.; [*15] Seville Indus. Mach. Corp., 742 F.2d at 791; but see Cooper v. Blue Cross and Blue Shield of Fla., Inc., 19 F.3d 562, 568 (11th Cir. 1994) (stating that the plaintiff's complaint must allege the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them).

Fourth, Shell contends that the complaint fails to describe the persons making the alleged misrepresentations on behalf of Shell. Shell is again correct. The compliant does, however, imply that many or all of the misrepresentations were made through Shell's marketing campaign, which included brochures and manuals, as well as oral statements.  More importantly, plaintiffs quote or paraphrase several of Shell's "false and misleading oral and written statements." These quotes place Shell on notice of "'the precise misconduct with which [it is] charged.'" Durham, 847 F.2d at 1511 (quoting Seville Indus. Mach. Corp., 742 F.2d at 791).

 [*16] Finally, Shell argues that the complaint fails to specify the persons hearing or receiving such communications on behalf of plaintiffs. Shell is correct. Nevertheless, plaintiffs failure to plead the names of specific individuals is irrelevant in light of the above analysis. Although plaintiffs have not pleaded every detail relevant to their fraud claim, **Rule 9(b) does not require them to do so.** Rule 9(b) requires only that plaintiffs plead with particularity the "circumstances constituting fraud." While plaintiffs' complaint is not a model of clarity and organization, the court finds, for the above stated reasons, that plaintiffs have pleaded the circumstances of Shell's alleged fraud with particularity. The complaint provides Shell with adequate information from which it can appropriately answer plaintiffs' allegation of fraud. **Consequently, Shell's motion for more definite statement will be denied.** (emphasis added).

(35)  Finally, in the case of <u>Austin v. Auto Owners Ins. Co.</u>, 2012 U.S. Dist. LEXIS 105862

(S. D. ALA 2012) the Court held:

Under clearly established law, motions for more definite statement are disfavored and are confined to such narrow circumstances as "shotgun pleadings" or unintelligible pleadings, **not pleadings that are merely less detailed than a defendant might like.** See, e.g., Raetano v. Bray, 2012 U.S. Dist. LEXIS 100936, 2012 WL 2979022, *2 (M.D. Fla. July 20, 2012) [*21] ("Motions for a more definite statement are disfavored under the law."); Dri-Eaz Products, Inc. v. Dan Duc Nguyen, 2012 U.S. Dist. LEXIS 60860, 2012 WL 1537598, *1 (W.D. Wash. May 1, 2012) (**Rule 12(e) motions are "ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail"**) (citations omitted); Phifer v. Sevenson Environmental Services, Inc., 2012 U.S. Dist. LEXIS 34375, 2012 WL 868692, *3 (D. Del. Mar. 14, 2012) **(Rule 12(e) motions are "highly disfavored" and appropriate only in a "rare case") (citations omitted). Simply put, a more definite statement is warranted only if the complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."** Rule 12(e), Fed.R.Civ.P.; see Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F.Supp.2d 1218, 1221 (S.D. Ala. 2005) ("A motion for a more definite statement will only be required when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself.") (citations omitted).

Auto Owners articulates no legal argument for how this stringent threshold could be satisfied here. On its face, the First Amended Complaint is pleaded with sufficient specificity and clarity that Auto Owners is **fairly notified** of the nature of Count Two and is capable of framing a responsive pleading. Thus, a more definite statement is not reasonably necessary to safeguard Auto Owners' interests or facilitate its ability to fashion a responsive pleading. **Defendant's alternative Rule 12(e) motion is denied.** (emphasis added).

(36)  Plaintiff's FAC is in compliance with F.R.C.P 12(3) and doesn't require any further clarification.  Each of the Defendants named under Count III, Intentional Tortuous Interference, are the same Defendants described by name, date, and subject matter, in the factual allegations. Wherever false and fabricated statements were being told by the named Defendants are listed and delineated or described by subject matter or reasonable inference, and those false and fabricated stories were communicated to strangers and non-public board members, were discussed, and all such actions were directly and collectively responsible for the termination of the Plaintiff from his position as Executive Director.  Contrary to all appearances, this is not Defendants' Motion for Judgment as a Matter of Law, wherein absence of evidence is determinative. This case is at the pleading stage, causes of action are correctly stated, Defendants actions are reasonably detailed, and Defendants have sufficient notice of why they are named as Defendants and for what purpose. Based up the applicable rules and law, Defendants' Motion #55 and #56 should be denied.

/s/   B. Kincey Green Jr.

B. Kincey Green, Jr.  (GRE040)
Attorney for Plaintiff

B. Kincey Green Jr.
REEVES & STEWART PC
P. O. Box 447
Selma, Alabama 36702-0447
Telephone 334-875-7236
kincey@bellsouth.net

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the Plaintiff's Response has been

served upon all parties to this civil action by serving each of their attorneys appearing in this civil

action and listed below through the CM/ECF court system.

Barbara C. Wells (HIL045)
C. Richard Hill (GIL037)
Blake Brookshire (BRO313)
CAPELL & HOWARD
150 South Perry Street
Montgomery, Alabama 36104

Tabor R. Novak, Jr (NOV001)
Miland Fredrick Simpler, III (SIM103)
BALL BALL MATTHEWS & NOVAK, PA
445 Dexter Avenue Suite 9045
Montgomery, Alabama 36104

Marc James Ayers (AYE006))
Davis S. Vaughan (VAU020)
BRADLEY ARANT ROSE & WHITE
One Federal Place
1819 5th Avenue
Birmingham, Alabama 35203

Arnold W. Umbach, III (UMB002)
Walter W. Bates (BAT007)
Madelines Greskovich (GRE147)
STARNES DAVIS FLORIE LLP
100 Brookwood Place #7
Birmingham, Alabama 35203

Brandon K. Essig (ESS001)
Logan T. Mathews (MAT068)
LIGHTFOOT FRANKLIN & WHITE llc
400 20TH Street North
Birmingham, Alabama 35203

Robert D. Segall (SEG003)
COPELAND FRANCO
P. O. Box 347
Montgomery, Alabama 36101-0347

R. Mac Freeman (FRE046)
RUSHTON STAKELY
184 Commerce Street
Montgomery, AL 36104-2538

Albry Joe Peddy (PED002)
SMITH, SPIRE, PEDDY, HAMILTON & COLEMAN, P.C.
2015 Second Avenue North - Suite 2000
Birmingham, AL 35203-3712

Done this 9th day of November, 2018.

/s/ B. Kincey Green Jr.  (GRE040)
Attorney for Plaintiff

B. Kincey Green Jr.
REEVES & STEWART PC
P. O. Box 447
Selma, Alabama 36702-0447
Telephone 334-875-7236
kincey@bellsouth.net