# IN THE U.S. DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

**NORRIS W. GREEN**,

Plaintiff,

**STATE BOARD OF MEDICAL EXAMINERS**, and each individual board member, including former board members, who were involved in the actions of the Board of Medical Examiners on September 20, 2017, and prior thereto, and the **BOARD OF CENSORS OF THE MEDICAL ASSOCIATION OF ALABAMA**, and **THE MEDICAL ASSOCIATION OF ALABAMA,** and each individual board member, including former board members, who were involved in the actions of the Board of Censors on September 20, 2017, and prior thereto, namely, **Boyde Jerome Harrison, M.D., H. Joseph Falgout, M.D., Mark H. LeQuire, M.D., Gregory W. Ayers, M.D., Eli L. Brown, M.D., David P. Herrick, M.D., Beverly F. Jordan, M.D. ,Gary F. Leung, M.D., John S. Meigs Jr., M.D., Dick Owens, M.D., Bradley S. Rice, M.D., Charles M.A. Rogers IV, M.D., and State Board of Medical Examiners Staff Attorneys, Patricia Shaner**, and **Eric Wilson Hunter.**

Defendants.

**CIVIL ACTION NO.**

**2:18-CV-00719-SMD**

**DEMAND FOR JURY TRIAL**

**CONSTITUTIONALITY OF CODE OF ALABAMA §34-24-53 CHALLENGED**

# SECOND AMENDED COMPLAINT FOR $10,000,000.00

# COMPENSATORY AND PUNITIVE DAMAGES AND ADDITIONAL 42 USC 1983 COMPENSATORY AND PUNITIVE DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff's First Amended Complaint is hereby amended as required by the Order of the U. S. Magistrate, Stephen M. Doyle, entered April 5, 2019.

## STATEMENT OF THE CASE

This is a civil action brought by the former Executive Director of the State Board of Medical Examiners, as Plaintiff, against the State Board of Medical Examiners (hereinafter interchangeably BME or State Board of Medical Examiners), and the Medical Association of Alabama, acting by and through it's Board of Censors, (hereinafter interchangeably MASA or Board of Censors) including certain of their (BME and MASA) individual Board members, and former Board members, and certain staff employees who collectively and actively engaged in a conspiracy to egregiously, maliciously, tortiously, intentionally and wrongly cause the forced and constructive dismissal of the Plaintiff from his position as Executive Director on September 20, 2017, and in the course of doing so the State Board of Medical Examiners, acting by and through certain of its members violated Plaintiff's right to fundamental procedural due process guaranteed under the 14th Amendment to the U. S. Constitution. Due to the inherent nature of conspiracies, and the delay in obtaining discovery in federal courts, the allegations which follow are based upon factual information, reasonable belief, and the reasonable and logical inferences drawn therefrom.

## JURISDICTIONAL STATEMENT

This civil action is filed under multiple state and federal causes of action, principally, 42 U.S.C.S §1983 and §1988, and 28 U.S.C.S. §1367(a), and pursuant to the test adopted in **Vanover v. NCO Financial Services, Inc., 857 F. 3D 833** (11th Circuit 2017), and **Wyles v. Sussman, 661 Fed. Appx. 548,** (10th Circuit 2016).

## PARTIES

(1) Plaintiff, Norris W. Green, (hereinafter Plaintiff) is a resident of Montgomery County, Alabama who served in the Alabama Legislative Fiscal Office from 1976 until 2015, departing in July 2015 while serving as the full-time Director of the Legislative Fiscal Office to accept a position as Associate Executive Director of the State Board of Medical Examiners. In January 2017, Plaintiff was unanimously elected to become full-time Executive Director of the State Board of Medical Examiners.

(2) Defendant, State Board of Medical Examiners, has its principal offices in the City of Montgomery, Montgomery County, Alabama, and on September 20, 2017, engaged in discussions and deliberations involving false and malicious allegations against the Plaintiff, over whom the State Board of Medical Examiners had absolutely no right to promote without a legitimate and serious investigation, no right to violate the privacy of the Plaintiff, and no right to receive the unsubstantiated reports or statements of Board members, or former Board members, or staff persons concerning the Plaintiff without affording Plaintiff the Constitutional protections of due process. Because there was wanton and malicious absence of procedural due process governing the meeting and because of the intentional, grossly negligent, and flagrant

violations of the Alabama Open Meetings Law, the meeting was void and should have never been conducted or acted upon; and, because the Board members, and former Board members, of the State Board of Medical Examiners, already identified by name conducted the meeting as mere formality, having days early decided to dismiss the Plaintiff, all for the sole purpose of covering up the improper dismissal of the Plaintiff without conducting any investigation. Those members did intentionally and maliciously interfere with and breached the employment rights of the Plaintiff, defamed the Plaintiff, violated the Plaintiff's right of privacy, and thereby violated Plaintiff's right to Constitutional procedural due process.

(3) Defendant, Boyde "Jerry" Harrison, M.D, (hereinafter Defendant Harrison) was formerly President of the Medical Association of Alabama and a member of the Board of Censors of the Medical Association of Alabama, and held that Board membership position as President of the Medical Association of Alabama, until he resigned on August 15, 2017. At the time Defendant Harrison resigned, the following named medical doctors were serving as officers of the Medical Association of Alabama which according to the By-Laws of the Medical Association of Alabama, entitled each of them to serve on the Board of Censors of the Medical Association of Alabama and by state statute on the State Board of Medical Examiners, namely, Jefferson Underwood III, M.D., was during the time leading up the Plaintiff's dismissal, and at the time of Plaintiff's dismissal, serving as President of the Medical Association of Alabama, David P. Herrick, M.D. was serving as Past President of the Medical Association of Alabama, and Ronnie Lewis, M.D. (deceased) was serving as Vice-President of the Medical Association of Alabama. Jefferson Underwood III, M.D. became President of the Medical Association of Alabama on August 15, 2017, and his former position as President-Elect remained vacant for the next eight (8) months as required by the By-Laws of the Medical Association of Alabama which

clearly state that a vacancy in the office of President-Elect will remain unfilled until the next annual meeting of the Medical Association of Alabama (which occurred on April 12, 2018). Based upon the foregoing facts, during the time of the events surrounding the forced dismissal of the Plaintiff, Defendant Harrison was not a member of the Board of Censors of the Medical Association of Alabama and was therefore not a member of the State Board of Medical Examiners, and consequently all of his emails, text messages, personal conversations, telephone calls, comments, opinions, board discussions and board deliberations transmitted and/or made between August 15, 2017 and April 12, 2018, concerning the Plaintiff were made by Defendant Harrison as a private citizen, and all votes he submitted at all board meetings he participated in on September 20, 2017 are void and a nullity. Furthermore, at all times covered in this complaint, Defendant Harrison was not serving in any capacity that entitles him to invoke qualified or limited immunity under the Constitution of Alabama. Defendant Harrison is believed to be the principal incognito architect of the malicious conspiracy to oust the Plaintiff from his position as Executive Director of the State Board of Medical Examiners, during the time when Defendant Harrison was a private citizen with no right to be involved in the proceedings and business of the Board of Censors and with no right to be involved in the proceedings and business of the State Board of Medical Examiners. Notwithstanding any argument concerning BME's immunity, Defendant Harrison is not entitled to any immunity because during the time covered by this complaint, Defendant Harrison was not an employee, officer or board member of the State Board of Medical Examiners, and was therefore a complete stranger to any employment relationship with the Plaintiff on September 20, 2017, and the events leading up to the constructive dismissal of the Plaintiff on that date.

Defendant Harrison is also believed to be the principal architect, acting directly and indirectly through others, of broadcasting malicious and defamatory statements about the Plaintiff which transpired on and before September 20, 2017 at the Board of Censors of the Medical Association of Alabama, the Executive Session of the Board of Censors, and the illegal Executive Session of the State Board of Medical Examiners, when he had no right to attend, had no right to vote, had no right to express an opinion, and possessed no authority to participate in and/or mastermind the efforts to oust the Plaintiff.

(4) Defendant, Patricia Shaner, (hereinafter Defendant Shaner) is a resident of Montgomery County, Alabama, who served as an employee of the State Board of Medical Examiners and continues to serve. Defendant Shaner was serving as one of three staff attorneys during the weeks leading up to the constructive dismissal of the Plaintiff including the date of the constructive dismissal of the Plaintiff, however, on more than one occasion during the course of events leading up to the constructive dismissal of the Plaintiff, Defendant Shaner clearly acted with malice outside the line and scope of Defendant Shaner's job including the communication of defamatory statements and engaging in discussions about such statements and other fabricated accusations with Board members, and former Board members, and strangers leading to the constructive dismissal of the Plaintiff.

(5) Defendant, Eric Wilson Hunter (hereinafter Defendant Hunter) is a resident of Jefferson County, Alabama who serves as an employee of the State Board of Medical Examiners. Defendant Hunter was serving as one of three staff attorneys during the weeks leading up to the constructive dismissal of the Plaintiff including the date of the constructive dismissal of the Plaintiff, however, on more than one occasion during the course of events leading up to the constructive dismissal of the Plaintiff, Defendant Hunter acted with malice

outside the line and scope of his job by talking to Board members, former Board members, employees, and strangers who were also acting with malice outside the line and scope of their employment including the propagation and fabrication of untrue and defamatory rumors which were the proximate cause of Plaintiff's constructive dismissal.

(6) Defendant, Medical Association of Alabama, (hereinafter Defendant MASA) acting by and through its Board of Censors, and through the members of its staff, and who has its principal offices in the City of Montgomery, Montgomery County, Alabama, did on September 20, 2017, engage in discussions and deliberations involving false and malicious allegations against the Plaintiff, over whom the Medical Association of Alabama had absolutely no right to discuss, no right to violate the privacy of the Plaintiff, and no right to receive the reports or statements of Board members, or former Board members, or staff persons concerning the Plaintiff, and by doing so intentionally and maliciously interfered with the employment of the Plaintiff, defamed the Plaintiff, and violated the Plaintiff's right of privacy.

(7) Defendants Dr. H. Joseph Falgout, M.D., Dr. Mark H. LeQuire, M.D., Gregory W. Ayers M.D., Eli L. Brown, M.D., David P. Herrick, M.D., Beverly F. Jordan, M.D., Gary F. Leung, M.D., John S. Meigs Jr. M.D., Dick Owens, M.D., Bradley S. Rice, M.D., Charles M.A. Rogers IV, M.D., are believed to all be members of the State Board of Medical Examiners and members of the MASA Board of Censors who as members of the Board of Censors and while participating in a monthly meeting of the Board of Censors on the morning of September 20, 2017, actively participated in the constructive dismissal of the Plaintiff, and are further identified as those who engaged in deliberations and/or discussions on September 20, 2017, in support of the Plaintiff's dismissal which included a non-Board member, who passed along and publicized

verbally, false, fictitious and/or intentionally fabricated rumors, and in the presence of strangers inside and outside those meetings to third parties.

# I
# CAUSE OF ACTION
# BREACH OF IMPLIED CONTRACT

(1) In January 2015, the former Executive Director of the State Board of Medical Examiners extended a specific offer to the Plaintiff to leave his job as Director of the Legislative Fiscal Office where he had been employed for the previous 39 years, and accept a new job as Associate Executive Director of the State Board of Medical Examiners for four (4) years with the expectancy of eventually becoming Executive Director. During the prior 32 year history of the State Board of Medical Examiners, the Executive Director had the full support, authority, and consent of the Credentials Committee of the Board of Medical Examiners, and the full support and consent of the Board of Medical Examiners to hire employees and dismiss employees at his discretion. The minimum four (4) year duration of Plaintiff's employment and his salary and benefits were specifically communicated by the former Executive Director and agreed upon by the Plaintiff, with the consent of the Credentials Committee, which was communicated to the full BME board.

(2) The Plaintiff provided significant consideration for his new position as Associate Executive Director. For most of its modern history, the State Board of Medical Examiners had a well known State Senator serving as it's Executive Director with years of experience in legislative matters, was well known throughout political circles in Montgomery, and had extensive contacts with people in important political and business positions throughout the state which was of great benefit to the State Board of Medical Examiners. In January 2015, the

Plaintiff had worked in state government for the previous 39 years, worked exclusively with the Alabama State Legislature, worked closely with State Senators and State Representatives on both sides of the political aisle, and had equally comparable legislative skills which were acknowledged by the retiring Executive Director. The Plaintiff already held a high paying position as Director of the Legislative Fiscal Office with substantial retirement benefits, and the position was one Plaintiff could have held indefinitely for years to come, with each passing year increasing his retirement benefits and leaving Plaintiff in a position to potentially receive annual raises. All of these benefits were surrendered by the Plaintiff when he was recruited and hired by the State Board of Medical Examiners.

(3) Between July 2015 and the end of December 2016, the Plaintiff, as Associate Executive Director, while working with the former Executive Director and with the Office Manager of the State Board of Medical Examiners began to identify expenditures by the State Board of Medical Examiners that were not in compliance with statutory, regulatory, and ethical authority. By the time the Plaintiff was elected Executive Director in January 2017, the Plaintiff was well on his way toward implementing some of the necessary changes required by various statutory and regulatory authorities governing the work of the State Board of Medical Examiners. Unknown to the Plaintiff, Defendant Harrison, in concert with Alabama Medical Association lobbyist, Richard Whitaker, who both opposed certain changes to the improper expenditures by the State Board of Medical Examiners, and eventually in further concert with Alabama Board of Medical Examiner' staff attorneys, Defendant Shaner and Defendant Hunter, became actively engaged in what culminated in a malicious and fabricated ploy to present to the State Board of Medical Examiners enough fabricated evidence to have the Plaintiff dismissed with the help of a majority of complicit Board members, to include spreading false rumors about

an improper relationship or extra marital affair with a staff member, and intentionally creating a false impression of disarray within the operations of the State Board of Medical Examiners legal division, and did thereby directly and proximately cause the dismissal of the Plaintiff from his new position as Executive Director on September 20, 2017, twenty-one months before his four year contract was completed.

(4) The State Board of Medical Examiners grossly and maliciously breached the contract of the Plaintiff by failing to follow its required procedures for dismissal, engaging in a surreptitiously and procedurally flawed effort to force the Plaintiff to resign without providing the plaintiff with a modicum of required procedural due process; and failed to conduct any serious investigation of the false rumors and statements.

(5) The Alabama Supreme Court long ago set out three requirements which a plaintiff-employee must prove in order to establish a contract for a definite term. Those same three requirements are present in this case, namely (1) there was a clear and unequivocal offer of employment for a definite term, (2) that the hiring agent had the authority to bind the principal to employment for a definite term, and (3) the employee provided substantial consideration for the contract separate from the services to be performed. Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725 (Ala. 1987), Birmingham -Jefferson County Transit Authority vs. Arvan, 669 So 2d 825 (Ala. 1995). The above cases also recognizes the general rule that every contract implies an obligation of good faith and fair dealing, none of which was practiced by the Defendants in this case.

(6) As a proximate result of Defendant, State Board of Medical Examiners, breach of Plaintiff's four year contract with the Alabama Board of Medical Examiners, Plaintiff was caused to suffer damages in lost earnings, lost health insurance benefits, lost deferred

compensation, lost lump sum pension benefits, and lost accrued sick leave in the amount of $782,056.00. Matthews v. Alabama A&M University, 716 So. 2d 1272 (Ala. Civ Appeals 1998).

(7) Plaintiff asks for the jury to find Plaintiff had a four (4) year contract with the State Board of Medical Examiners that was breached by the State Board of Medical Examiners, with the damages to be determined and awarded by the Alabama Board of Adjustment.

## II
## CAUSE OF ACTION
## TORTUOUS INTERFERENCE WITH EMPLOYMENT RELATIONSHIP

(1) At all times during August and September 2017, the Plaintiff had a protectable employment relationship clearly known by all members of the State Board of Medical Examiners, by all members of the Alabama Medical Association Board of Censors, and clearly known by Defendant Harrison, Defendant Shaner and Defendant Hunter.

(2) The Code of Alabama governs the meeting fees and consulting fees applicable to the members of the State Board of Medical Examiners, who are entitled to received $300 for attendance at each monthly board meeting or designated board function, and also provides that medical doctors who review records as part of their investigative duties on the BME board are to be compensated at the rate of $300 per hour, but based an intentional and convenient misinterpretation of the applicable statutory law, Board members on the State Board of Medical Examiners bill and receive $300 per hour for activities clearly not contemplated in the statute and also are paid $300 per day for attending functions that are clearly not directly or even remotely related to the statutory duties of the State Board of Medical Examiners including travel

expenses plus $300 for showing up at various events unrelated to their duties as members of the State Board of Medical Examiners. Perhaps one of the greatest financial abuses within the State Board of Medical Examiners has been providing certain Board members with reimbursement of up to $10,000.00 per year to cover the cost of their annual CME requirements. Nowhere does the Code of Alabama authorize Board members of the State Board of Medical Examiners to award themselves up to $10,000.00 reimbursement for seminars and travel and payments associated with attending CME seminars, ostensibly to earn CME hours, when almost every medical doctor in the State of Alabama has to cover their own CME costs, and also pay fees to the Board of Medical Examiners for the renewal of their medical license, only to discover some of their hard earned cash is being doled out to a few select medical physicians on the BME board for CME, which is not a requirement or a statutorily allowed expense of the Board of Medical Examiners.

(3) Plaintiff in consultation with the board leadership in August 2017, one month before Plaintiff was constructively dismissed, proposed that the State Board of Medical Examiners stop paying the lucrative consulting fees that some board member physicians were charging State Board of Medical Examiners; and, to stop allowing BME board members to receive reimbursement for CME unless the meeting was clearly an integral part of the business of the State Board of Medical Examiners (in other words CME was not the primary focus of the meeting).

(4) Plaintiff recommended that the State Board of Medical Examiners stop paying the standard $300 per diem for attending any meeting unless the board approved it or unless it was clearly an State Board of Medical Examiners function. Defendant Harrison and others would routinely go to a meeting in another town having nothing to do with State Board of Medical

Examiners, and receive $300 for attending. The board never formally adopted a rule to stop paying it during Plaintiff's tenure, but board leadership tentatively agreed for Plaintiff to implement it in the Fall of 2017.

(6) Most of these proposed changes by the Plaintiff to bring the State Board of Medical Examiners in compliance with state statutes were unacceptable to Defendant Harrison who on or before August, 2017 began to look for any excuse to remove the Plaintiff from his position as Executive Director to stop what Defendant Harrison referred to as a misunderstanding by Plaintiff of how cash was to be used at BME; and, thus quietly behind the scenes Defendant Harrison hatched the conspiracy to bring about Plaintiff's constructive dismissal with the assistance of Defendant Shaner and Defendant Hunter, and a very complicit group of board members.

(7) In the days leading up to Plaintiff's dismissal, Defendant Shaner and Defendant Hunter while acting outside the line and scope of their staff positions, were talking to strangers about a totally false and improper relationship or extra marital affair with a staff member, a rumor they themselves fabricated about the plaintiff, and while doing so, Defendant Shaner and Defendant Hunter intentionally, maliciously and falsely conspired and interfered with Plaintiff's employment contract without any justification, and their actions, combined with the actions of Defendant Harrison and the Board of Censors were the direct and proximate cause of Plaintiff's constructive dismissal, thereby causing Plaintiff severe damage.

(8) Defendant Shaner and Defendant Hunter acting in concert with Defendant Harrison and/or with agents (other board members) of Defendant Harrison, in the weeks and days leading up to September 20, 2017, intentionally conspired to create a false impression that the BME legal division was in shambles, as communicated to the Plaintiff by Mark H. LeQuire,

M.D., a non-existent problem that could only be cured by a dismissal of the Plaintiff. Furthermore, Defendant Shaner made statements that ended up being a topic of discussion at the board meetings on September 20, 2017, involving inter alia, that Defendant Shaner was going to file a lawsuit against Plaintiff, without anyone ever disclosing for what cause. What is known is that Defendant Shaner's vague threats were communicated to the Plaintiff by the board leadership as one of the reasons Plaintiff had to be dismissed, notwithstanding that Defendant Shaner had a long history of threatening people with lawsuits.

(9) Defendant Shaner is the longest serving member of the small legal staff at State Board of Medical Examiners. Defendant Shaner and Plaintiff always had a professional working relationship during Plaintiff's tenure as Associate Executive Director and later as Executive Director until Defendant Shaner realized she might be able to bring about the Plaintiff's downfall working in concert with others. The main function of the legal staff at State Board of Medical Examiners is to investigate and prosecute cases before the Alabama Medical Licensure Commission. However, over 12 years ago, Defendant Shaner, who at the time was one of only two lawyers in the legal division of Alabama Board of Medical Examiner, asked for permission from the former Executive Director and received permission to stop handling cases before the Licensure Commission. The main reason lawyers are hired to work for State Board of Medical Examiners is to prepare and prosecute cases before the Medical Licensure Commission. Defendant Shaner for the past twelve (12) years has been exempted from performing the job she was primarily hired to do. Defendant Shaner told someone in 2015, that if the Plaintiff was hired as Associate Executive Director for a salary higher than Defendant Shaner's $200,000.00 plus annual salary, she was going to file a lawsuit against the State Board of Medical Examiners, one of several false threats that became the pattern and practice of Defendant Shaner prior to

Plaintiff's dismissal. Completely contrary to the job description she wrote for herself, Defendant Shaner repeatedly insisted that she was not answerable to the Executive Director (even though she knew she had to, and did obtain permission from the former Executive Director to radically change her job status). Defendant Shaner never accepted the Plaintiff as her boss, and when Defendant Shaner continued repeating that insubordinate statement to the Plaintiff, Defendant Shaner was repeatedly told she was wrong, and the Plaintiff eventually reported Defendant's insubordination to the State Board of Medical Examiners board leadership which initially mislead the Plaintiff by agreeing Defendant Shaner was insubordinate and should be fired, but a few days later on August 15, 2017, after the Board leadership conferred with the leadership's private citizen boss, Defendant Harrison, the board leadership decided the messenger should be fired, not the insubordinate employees. What follows is a time line of the events preceded the dismissal of the Plaintiff:

**(A)** **In August 2017**, there was no merit system at BME, no job evaluations, which resulted in many people in the office being highly overpaid for their job duties. Plaintiff told the board leadership that automatic raises needed to stop and a normal evaluation process instituted. Plaintiff received permission from the BME board leadership and developed an evaluation form based on his decades of work at the Legislative Fiscal Office. Plaintiff conducted his first evaluation in August 2017. Defendant Shaner refused to participate in Plaintiff's plan and came up with her own evaluation process. All 37 BME employees were evaluated. Defendant Shaner submitted a very favorable review of Defendant Hunter. Plaintiff interviewed Defendant Hunter after receiving Defendant Shaner's report, also in August 2017 and Plaintiff had a nice conversation with

Defendant Hunter. At that time, Plaintiff assured Defendant Hunter that he would replace Defendant Shaner, when Defendant Shaner retired. Defendant Hunter thanked Plaintiff for staying out of the affairs of the legal division, which Plaintiff didn't consider to be a significant comment until Plaintiff was forced out one month later.

**(B)** **September 13, 2017**, (Wednesday). was the customary monthly meeting date with Defendant LeQuire to go over upcoming items on the agenda for the monthly BME board meeting in one week. As the meeting was concluding, Defendant LeQuire says, there is something I need to tell you, Defendant Shaner and Defendant Hunter called me about "problems in the legal division." Plaintiff immediately responded, "I have no idea what you are talking about, no one has come to me about any problems in the legal division." Defendant LeQuire went on to say, Defendant Hunter said Plaintiff is going around them in the legal division and showing too much favoritism toward the other lawyer. Plaintiff responded by telling Defendant LeQuire we just completed an office evaluation less than a month ago, and no such problems were reported, flagged or implied. Defendant LeQuire said he would have lunch with Defendant Hunter the next day and try to find out what Defendant Hunter is talking about.

**(C)** **September 14, 2017** (Thursday). Defendant LeQuire had lunch with Defendant Hunter. Defendant LeQuire met with Plaintiff later that evening at the same location as the day before. Defendant LeQuire said, "I'm afraid Defendant Hunter is going to quit." Defendant LeQuire then said Defendant Shaner is considering a lawsuit against Plaintiff. Plaintiff asked, "a lawsuit for what?"

Defendant LeQuire didn't know. Defendant Lequire next told Plaintiff that Defendant Hunter says he can't advance with your favoritism toward the other lawyer. Plaintiff responded by saying he has nothing to do with the case load in the legal division, and has never gone around the legal division, and has absolutely no idea what Defendant Shaner and Defendant Hunter are referring to. The meeting concluded by Plaintiff telling Defendant LeQuire that Plaintiff would meet with Defendant Shaner and Defendant Hunter and find out what they are talking about.

**(D)** **September 15, 2017**, (Friday). Plaintiff showed up at the office, and stopped by Defendant Hunter's office and told Defendant Hunter he wanted to see Defendant Hunter in an upstairs meeting room. After 5 or 10 minutes Defendant Hunter didn't show up. A short while later, Defendant Shaner and Defendant Hunter showed up together. Plaintiff said, I would like to meet with each of you individually. Defendant Shaner said, "I'm not coming in your office, and I will never meet with you alone in a room again." Defendant Shaner also would not allow Defendant Hunter to meet alone with Plaintiff so Plaintiff agreed to meet with both of them together in the conference room. Plaintiff asked, why did you call Defendant LeQuire about a problem you claim you are having without ever mentioning it to me? Defendant Hunter yelled in a loud voice, "you are too blind to see." Plaintiff asked, what are you talking about? If you had a problem, why didn't you come see me? Defendant Hunter repeated yelling "you are too blind to see." Defendant Hunter was reminded that Plaintiff was his boss and was not to talk to Plaintiff in that tone of voice, Defendant Hunter replied "you don't talk to

me in that tone of voice" and further stated , "I don't work for you, I work for the board." Plaintiff responded to Defendant Hunter, as he and the former Executor Director had repeatedly told Defendant Shaner, "you do report to me as Executive Director." Obviously Defendant Hunter was now taking poisonous cues from Defendant Shaner reflected in Defendant Hunter now patterning Defendant Shaner's erroneous assertion with Defendant Hunter also erroneously claiming that he answered to no one but the Board. Plaintiff ended the meeting by telling them he would report this to the Board. Plaintiff left the meeting without receiving any explanation of "what too blind to see" was referring to, and without receiving or having any knowledge of any complaints Defendant Shaner or Defendant Hunter had against Plaintiff. At the time Plaintiff did not realize, but now knows this was part of a fabricated conspiracy Defendant Shaner and Defendant Hunter, along with others, were manufacturing to undermine Plaintiff as Executive Director, which ultimately caused Plaintiff's dismissal based entirely upon false accusations. Plaintiff now understands when Defendant Hunter was claiming Plaintiff was "too blind to see," Defendant Hunter had been engaged in discussions over the previous days plotting, conspiring, and being advised by Defendant Harrison and others that Plaintiff was going to be dismissed, thereby prompting Defendant Hunter and Defendant Shaner to make certain there was more false evidence of the legal division being in shambles by intentionally and totally disrespecting the BME Executive Director that Friday morning before the Wednesday dismissal. Interestingly, four months later, Defendant Harrison was asked to make, and did make, a motion for the State Board of Medical Examiners

to "change" who the lawyers in the legal division reported to, and the State Board of Medical Examiners had to secretly, in January 2018, change Defendant Shaner and Defendant Hunter from being answerable to the Executive Director, and make the lawyers answerable to only the Board, a "boss" who only shows up a few hours one day a month!

**(E)** **September 15, 2017,** (Friday). After trying to have a productive meeting with Defendant Shaner and Defendant Hunter on Friday morning, Plaintiff went back to his office and called Defendant LeQuire, Vice-Chairman of the State Board of Medical Examiners. Plaintiff told Defendant LeQuire that Plaintiff couldn't run an office with staff lawyers who don't report to me and who insist they only work for the Board which only meets one day a month. Plaintiff also told Defendant LeQuire, that day that Defendant Shaner and Defendant Hunter were engaging in behavior that was totally insubordinate. Defendant LeQuire immediately responded by saying “we can't have this insubordination” and agreed this kind of behavior warranted both of the lawyers being fired. Defendant LeQuire then related this situation with Defendant Shaner and Defendant Hunter to a war story about a similar situation that came up at a hospital. Defendant LeQuire told the Plaintiff “you must maintain control in your office.” Plaintiff reminded Defendant LeQuire that the State Board of Medical Examiners is the only one authorized to dismiss employees, not the Executive Director. The Plaintiff and Vice-Chairman, Defendant LeQuire discussed changing the personnel manual so that the Executive Director could dismiss employees.

Plaintiff called Defendant LeQuire later that night and discovered Defendant LeQuire had done a 180 on him and the conversation ended abruptly.

**(F)** **September 17, 2017**, (Sunday). Plaintiff receives a telephone call from the former Executive Director and discovered that Defendant Harrison has become actively involved over the weekend in the events surrounding Defendant Shaner and Defendant Hunter, which Defendant Harrison had no right to do as a private citizen. Furthermore, Defendant Shaner and Defendant Hunter were completely outside their line and scope of work in discussing such matters with Defendant Harrison. As evident in the preceding paragraphs, Defendant Shaner and Defendant Hunter in the days leading up to Plaintiff's dismissal, wrongly and intentionally refused to comply with the lawful employment instructions and directives of the Plaintiff, behaved in an intentionally insubordinate manner, and wrongly refused to acknowledge they worked under the supervision of the Plaintiff, and did so for the sole purpose of creating a false impression of a toxic work environment to serve as a fabricated excuse for the State Board of Medical Examiners to knowingly use as a dismissal of the plaintiff for an unjust cause. Later that Sunday night, Defendant Harrison initiates a conference call with certain board members he can count on to follow his directives. The purpose of the call was to discuss formalizing the dismissal of the Plaintiff.

**(G)** **September 18, 2017**, (Monday). The customary day for the Executive Director to review the schedule for the upcoming Credentials Committee meeting with the Board Chairman and Board Vice-Chairman, Defendant Falgout and Defendant LeQuire. As the meeting concluded, Defendant Falgout and

Defendant LeQuire were now defending Defendant Shaner and Defendant Hunter.

**(H) September 19, 2017,** (Tuesday). Routine meeting of the Credentials Committee involving Plaintiff, certain Board members, and various BME staff members. Later that evening Defendant LeQuire asked Plaintiff how Plaintiff was going to be able to pay for the new house Plaintiff has recently purchased. Such a question clearly shows that a majority of the BME Board had been polled and given their consent to dismiss the Plaintiff on Sunday night.

**(I) September 20, 2017**, (Wednesday). The day for the private monthly meeting of the Board of Censors where the above mentioned false allegations were discussed, perpetuated, and presented as true, without the Board of Censors having any legal right to consider the employment status of the Plaintiff, and who were in fact strangers to the Plaintiff, and the use of the Board of Censors as the recipient of the fabricated information was done to shield the board members from public scrutiny and keep anyone from viewing a record of their deliberations. Later that same day, the State Board of Medical Examiners conducts their meeting, then goes into a unrecorded executive session (after dismissing the secretary), for the sole purpose of creating a false impression that they were conducting a fact finding meeting, when it was nothing more than an failed attempt at documenting what a majority of the board had decided days earlier without conducting any investigation or hearing. Those fabricated statements of Defendant Shaner, Defendant Hunter, and Defendant Harrison, communicated among each other and to other board members were directly

shared with members of the State Board of Medical Examiners on the afternoon of September 20, 2017, where those false allegations were further discussed, perpetuated, and presented as true according to **H. Joseph Falgout, M.D.** and **Mark H. LeQuire, M.D.** and constituted the proximate cause of Plaintiff's dismissal.

**(J)** **September 21, 2017** (Thursday) A close friend of one of the board members was in a bar lounge telling members of the public that Plaintiff had lost his job because of an extra marital affair.

**(K)** **October 9, 2017** (Tuesday) Defendant Shaner told the interim Executive Director, "when you find out what the Plaintiff did, then you will know what happened.."

(10) Plaintiff therefore demands compensatory and punitive damages against **Boyde Jerome Harrison, M.D., H. Joseph Falgout, M.D., Mark H. LeQuire, M.D., Gregory W. Ayers, M.D., Eli L. Brown, M.D., David P. Herrick, M.D., Beverly F. Jordan, M.D. ,Gary F. Leung, M.D., John S. Meigs Jr., M.D., Dick Owens, M.D., Bradley S. Rice, M.D., Charles M.A. Rogers IV, M.D., and State Board of Medical Examiners Staff Attorneys, Patricia Shaner**, and **Eric Wilson Hunter,** who jointly and severally, in their individual and official capacities, while acting with callous indifference outside the line and scope of their positions, discussed, spread, broadcasted, and perpetrated the above delineated false and malicious allegations about the Plaintiff, and who wantonly and maliciously, individually and conspiratorially, engaging in actions, efforts, and communications that intentionally and tortuously interfered with Plaintiff's employment as Executive Director, information at the time the originators and public disseminators knew or should have known were false, and who had

reason to know would be disseminated verbally and in writing without any investigation having been conducted, and in so doing, such false, slanderous and defamatory statements, were disseminated before and among members of the Board of Censors of the Medical Association of Alabama involving private citizens, when absolutely none of such false information should have been disseminated in the presence of people who should not have been recipients of any information about the Plaintiff, and which false information, intentionally and tortiously, interfered with Plaintiff's employment as Executive Director proximately causing his constructive dismissal for which Plaintiff demands judgment for $1,500,000.00 in compensatory damages for lost wages, back pay and lost future earnings, lost retirement benefits, lost medical coverage, interest on the losses, emotional pain and suffering, and embarrassment, and $8,500,000.00 in punitive damages, plus costs.

## III
## CAUSE OF ACTION
## VIOLATION OF PRIVACY

(1) The Medical Association of Alabama is a private trade organization having absolutely nothing to do with the Plaintiff or the Plaintiff's employment, yet on the morning of September 20, 2017, MASA's duly constituted Board of Censors, engaged in a gross violation of the Plaintiff's privacy by discussing and deliberating false statements about the Plaintiff, some rising to the level of defamation, but all statements and discussions involved giving publicity to matters concerning the Plaintiff that placed the Plaintiff before the public in a false light and thereby invaded Plaintiff's privacy, inter alia, intentionally false statements about a non-existent improper relationship or extra marital affair with a staff member, intentionally false statements

about the legal division of the State Board of Medical Examiners including the operations of the Office of Executive Director. Such false statements (a) caused Plaintiff to be placed before the public in a manner that would be offensive to any reasonable person, and (b) the members of the Board of Censors, and at least one other private individual, had knowledge of the truth and/or acted in reckless and intentional disregard as to the falsity of the publicized matters and the false light in which the Plaintiff was placed. All members of the Board of Censors of the Medical Association during the commission of the acts set forth herein, and at least one other private individual in attendance, had no involvement with the employment of the Plaintiff. As a direct and proximate result of the actions of the members of the Board of Censors of the Medical Association of Alabama, the Plaintiff suffered ridicule, embarrassment, shame, and humiliation and the deliberations were used in concert with other actions to cause the dismissal of the Plaintiff as Executive Director of the State Board of Medical Examiners. Hoover v. Tuttle, 611 So. 2d 290 (Ala. 1992).

(2) Wherefore the Plaintiff demands judgment against **Medical Association of Alabama**, and **Board of Censors** members **H. Joseph Falgout, M.D., Mark H. LeQuire, M.D., Gregory W. Ayers, M.D., Eli L. Brown, M.D., David P. Herrick, M.D., Beverly F. Jordan M.D., Gary F. Leung, M.D., John S. Meigs Jr., M.D., Dick Owens, M.D., Bradley S. Rice, M.D., Charles M.A. Rogers IV, M.D.,** who were present on September 20, 2017 in the Board of Censors monthly meeting, **and State Board of Medical Examiners Staff Attorneys, Patricia Shaner**, and **Eric Wilson Hunter** who were directly responsible for creating and generating the false and defamatory information discussed at that meeting while acting outside the line and scope of their job, and against **Boyde Jerome Harrison, M.D.,** who made certain the false and defamatory information was available for discussion at that meeting, for

compensatory damages of lost wages, back pay and lost future earnings, lost retirement benefits, lost medical coverage, interest on the losses, emotional pain and suffering, and embarrassment in the amount of $1,500,000.00 and punitive damages in the amount of $8,500,000.00 plus costs.

## IV
## CAUSE OF ACTION
## UNDER 42 USC 1983
## VIOLATION OF PROCEDURAL DUE PROCESS

The Plaintiff has no adequate remedy pursuant to state law to remedy the violations of his procedural due process rights guaranteed under the U. S. Constitution for the violations committed under color of state law by the State Board of Medical Examiners and by each previously named individual member of the State Board of Medical Examiners, for violating the following constitutional rights of the Plaintiff. The Plaintiff seeks injunctive relief, punitive damages and attorneys fees which are not available under state law for the following violation of the procedural due process:

(1) The Plaintiff was never given any specific or formal notice of the charges or accusations being made against him until after the Plaintiff was notified of his dismissal.

(2) The Plaintiff was never provided with the rules and policies governing the manner in which an Executive Director could be dismissed.

(3) The Plaintiff was never told who was going to present false claims against him at a board meeting, and was misled by Board members about the impact those false claims could have on Plaintiff's continued employment. It was grossly misleading for the Plaintiff to be told by H. Joseph Falgout, M.D. on the night of September 20, 2017, that nothing was going to happen, only to be told minutes later by the same H. Joseph Falgout, M.D. that Defendants voted

to dismiss the Plaintiff, thereby misleading the Plaintiff concerning the need to defend himself hire counsel, and present truthful evidence and truthful witnesses until it was too late.

(4) The Plaintiff was never provided with any procedural timetable for how false accusations would be handled by the State Board of Medical Examiners and was never provided with any notice of any step of the process adopted by the State Board of Medical Examiners to deal with any allegations against the Plaintiff.

(5) The Plaintiff was not given any opportunity to be confronted with accusations against Plaintiff or be allowed to present evidence on Plaintiff's behalf.

(6) The BME Board violated the right of the Plaintiff to present Plaintiff's own evidence; and to cross examine and question the false statements eagerly accepted by certain board members and staff employees, and the right of the Plaintiff to confront the accusers, and to be provided some forum in which to address the absence of fundamental due process.

(7) The BME Board engaged in grossly deceptive behavior by suggesting the Plaintiff appear at their illegally called executive session, and when Plaintiff appeared, was told, "we will let you talk" without any explanation of why Plaintiff was asked to attend the illegally called meeting.

(8) More seriously, the evidence will show the BME Board never intended to provide the Plaintiff with any procedural due process and are therefore guilty of a grossly intentional violation of Plaintiff's constitutional right to procedural due process. A majority of the members of the State Board of Medical Examiners had already agreed, reached a consensus, or decided earlier that morning in a private off-the-record meeting of the Board of Censors to terminate the Plaintiff without any minimal procedural due process afforded to the Plaintiff.

(9) There were serious implications and potential repercussion as a result of the false allegations discussed by the BME Board on September 20, 2017, and at no time was the Plaintiff advised of the allegations; and the Plaintiff was never allowed to be to accompanied by a representative or advised of his right to legal counsel.

(10) The BME Board completely failed to provide the Plaintiff with a fair and impartial fact-finding investigation, and completely failed to provide a fair and impartial hearing and failed to provide any type of pre-termination hearing.

(11) The BME Board further violated Plaintiff's right to procedural due process by conducting an executive session that was capricious, unreasonable and arbitrary in substance and procedure.

(12) The Plaintiff was never provided with a written decision of the findings against the Plaintiff or a written statements of the reasons for his dismissal, and to this day has not been informed of the reason for his dismissal.

(13) The Plaintiff's right of privacy was violated when false accusations were repeated by certain members of the BME Board to the general public.

(14) The BME Board never ordered any type of serious investigation to determine the truth and veracity of the allegations of those seeking the Plaintiff's dismissal; and, the reason their was no investigation conducted by the BME Board is because they were never interested in discovering the truth, they only wanted to support the dishonest legal division of BME to fabricate an excuse to dismiss the Plaintiff.

(15) On September 20, 2017, as the monthly meeting of the Board of Censors dragged on, Plaintiff learned the Board of Censors of the Medical Association of Alabama had gone into an executive session. The Board of Censors of the Medical Association of Alabama are a private

professional trade group, and therefore have no right to go into executive session concerning the Executive Director of State Board of Medical Examiners, and furthermore they don't employ Plaintiff and have absolutely nothing to do with Plaintiff, so why did the Board of Censors go into an Executive Session to discuss the Plaintiff? Discovery will show the exact false and defamatory information which was circulated and discussed about the Plaintiff at the private non-public meeting of the Board of Censors of the Alabama Medical Association on September 20, 2017.

(16) Later that same day, the State Board of Medical Examiners routine and uneventful monthly meeting, attended by the Plaintiff, concluded and was adjourned with no discussion and no vote to go into executive session. Plaintiff was gathering up his files to leave at the conclusion of the meeting, when Chairman, Defendant Falgout walked over and said to the Plaintiff, you "may want to stay," we are going into session, which Plaintiff assumed to mean an executive session. However, nothing was said during the regular monthly board meeting about going into executive session, which is required under the Alabama Open Meetings Law, and fundamental procedural due process requires notice to the Plaintiff if any hearing involving his employment status was going to be conducted about him. Plaintiff asked H. Joseph Falgout, M.D. in disbelief, does the whole Board know what we discussed on Monday about the insubordination of Defendant Shaner and Defendant Hunter? Plaintiff told H. Joseph Falgout, M.D. that he would stay as recommended.

(17) The Defendant Falgout opened the Executive Session and said, "Norris, I'll let you talk?" Plaintiff replied, "about what?" Defendant Harrison had some written questions apparently prepared prior to the morning deliberations of the Board of Censors of the Medical Association of Alabama meeting and started asking those questions. When the Board completed

their questioning of the Plaintiff, during which time not one accusation was made against the Plaintiff, the Plaintiff left the meeting. Defendant Falgout told Plaintiff as Plaintiff was leaving the meeting that "nothing was going to happen," a gross misrepresentation based upon the fact that Plaintiff was advised of his dismissal a few minutes later. Defendant Falgout then said the board was going to hear from Defendant Shaner and Defendant Hunter, who had days earlier refused to tell, when asked, if they had any complaints against the Plaintiff as Executive Director. Plaintiff asked the Board leadership and no one would tell him why he was there. Defendant Shaner didn't show up at work that day, so they interviewed Defendant Shaner by conference call, and interviewed Defendant Hunter in person. In other words, the Board asks Plaintiff to come to the meeting, made no accusations, asked the Plaintiff to speak, then after Plaintiff leaves, interviewed two members of the legal staff without ever allowing the Plaintiff to know what Defendant Shaner and Defendant Hunter planned to say, or did say, and allow Plaintiff the opportunity to respond or present witnesses or evidence on his behalf. Plaintiff hung around until 7:30 PM but was not allowed to hear what Defendant Shaner and Defendant Hunter told the board, and there have never been any official minutes of those deliberations published. After that meeting concluded Defendant Falgout and Defendant LeQuire came to Plaintiff's office with heads bowed, and told Plaintiff the Board wants you to resign "immediately," the Board will offer you three months severance pay if you will sign a non-disclosure agreement. Plaintiff said, if you are going to do that, why not make it 12 months severance? Defendant Falgout and Defendant LeQuire said, "we aren't authorized to do that." Plaintiff then asked "what if I choose not to resign and not accept your offer?" Defendant Falgout and Defendant LeQuire then said, the Board had voted to fire you "for cause if you don't resign." Plaintiff asked again, what cause, and why am I being asked to resign? Defendant

Falgout and Defendant LeQuire answered, because of the toxic work environment and because Defendant Shaner told the Board she is afraid for her safety. Plaintiff, at that moment in total disbelief asked them, what was the vote? Defendant Falgout said, "don't go there."

(18) The clearly established constitutional rights of procedural due process listed above were knowingly violated by the State Board of Medical Examiners and their board members on September 20, 2017, who had final authority for their discretionary actions, and were actions conducted with callous and deliberate indifference to the constitutional rights of the Plaintiff, and were actions for which any reasonable person would have known were being violated. The State Board of Medical Examiners has continued to engage in a pattern and practice of dismissing employees without any notice or hearing, as was done to the Plaintiff. The members of the State Board of Medical Examiners had no reason or justification for believing they could dismiss an employee in the manner in which they dismissed the Plaintiff on September 20, 2017. Fundamental constitutional due process is common knowledge among citizens of this nation, and reasonable notice and an opportunity to defend oneself from false charges is a known right which was blatantly denied the Plaintiff.

(19) Plaintiff asks the Court for the following relief:

(A) A judgment under 42 U.S.C. § 1983 for compensatory damages against the following named board members in their individual and official capacities**, H. Joseph Falgout, M.D., Mark H. LeQuire, M.D., Gregory W. Ayers, M.D., Eli L. Brown, M.D., David P. Herrick, M.D., Beverly F. Jordan, M.D., Gary F. Leung, M.D., John S. Meigs Jr., M.D., Dick Owens, M.D., Bradley S. Rice, M.D., Charles M.A. Rogers IV, M.D.,** all who were present on September 20, 2017 at the monthly board meeting, who supported and/or acquiesced in the violation of Plaintiff's rights to procedural due process for lost wages, back

pay and lost future earnings, interest, emotional pain and suffering, and embarrassment in the amount of compensatory damages of $500,000.00 per board member.

(B) A judgment under 42 U.S.C. § 1983 for punitive damages against the following named board members in their individual capacities, **H. Joseph Falgout, M.D., Mark H. LeQuire, M.D., Gregory W. Ayers, M.D., Eli L. Brown, M.D., David P. Herrick, M.D., Beverly F. Jordan, M.D., Gary F. Leung, M.D., John S. Meigs Jr., M.D., Dick Owens M.D., Bradley S. Rice, M.D., Charles M.A. Rogers IV, M.D.** in the amount of $1,000,000.00 per board member.

(C) A judgment under 42 U.S.C. § 1983 against **Boyde Jerome Harrison, M.D.** in his individual and official capacity for compensatory damages if he is able to convince a jury that he was a member of the State Board of Medical Examiners on September 20, 2017, in the amount of $1,500,000.00 for lost wages, back pay and lost future earnings, lost retirement benefits, lost medical coverage, interest on the losses, emotional pain and suffering, and embarrassment, and a judgment under 42 U.S.C. § 1983 for punitive damages against **Boyde Jerome Harrison, M.D.** in his individual capacity in the amount of $10,000,000.00.

(D) A judgment under 42 U.S.C. § 1988 and under all other applicable laws against each named Board Member, in their individual and official capacities, for attorney's fees, costs, witness fees, and expenses, including and any other legal or equitable relief which the Court deems just and proper to award.

# V
# CAUSE OF ACTION
# DECLARATORY AND INJUNCTIVE RELIEF AGAINST STATE BOARD OF MEDICAL EXAMINERS

(1) The Plaintiff asks the Court to declare the interpretation of Governor Fob James Executive Order #1, January 18, 1995, and Governor Kay Ivey, Executive Order #706, July 13, 2017, and enjoin the State Board of Medical Examiners from continuing the practice of employing and/or hiring lobbyists or pseudo lobbyists in violation of the law, so that future Executive Directors won't have to risk his/her job status by confronting Board members with the illegal practices.

(2) The Plaintiff asks the Court to declare the interpretation of Code of Alabama 1975 §36-1-11 and (a) enjoin the State Board of Medical Examiners from continuing the practice of doing business with the Medical Association of Alabama as long as the State Board of Medical Examiners continues to hire employees of the Medical Association of Alabama, and (b) enjoin the State Board of Medical Examiners from hiring lobbyists under the pretense of hiring lobbyists to do anything but lobby, so that future Executive Directors won't have to risk his/her job status by confronting Board members with such illegal practices.

(3) The Plaintiff asks the Court to declare the interpretation of Code of Alabama §34-24-54 and enjoin the State Board of Medical Examiners from paying $300 per hour to its members for speaking at CME events, enjoin the State Board of Medical Examiners from allowing its Board members to receive up to $10,000.00 per year for travel expenses and fees for attendance at events to earn their CME hours, and to require the State Board of Medical Examiners to only pay the statutory allowed $300 per diem attendance fees for official functions

of the State Board of Medical Examiners, so that future Executive Directors won't have to risk his/her job status by confronting Board members with illegal practices.

(4) The Plaintiff asks the Court to declare the interpretation of Code of Alabama §36-25-1 et seq. and require the State Board of Medical Examiners to operate subject to the Alabama Ethics Commission.

(5) The Plaintiff asks the Court to declare the interpretation of Section 43 of the Constitution of Alabama and Amendment 5 Article III of the Alabama Constitution and find that Code of Alabama §34-24-53 is unconstitutional thereby requiring the dissolution of the current arrangement which allows the private non-public Alabama Medical Association to independently decide who serves on the State Board of Medical Examiners contrary to the separation of powers doctrine, so that the State Board of Medical Examiners can be constitutionally organized and operated within the laws of the State of Alabama.

(6) And to award Plaintiff a Judgment for attorney's fees, costs, witness fees, and expenses, including any other legal or equitable relief which the Court deems just and proper to award in prosecuting the foregoing equitable relief.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all causes of action and requests for relief demanded in this civil action.

Dated this 22nd day of April, 2019.

/s/ B. Kincey Green Jr. GRE040
Attorney for Plaintiff

B. Kincey Green Jr.
Reeves & Stewart PC
PO Box 447
Selma, Alabama 36702-0447
Office 334-875-7236
Email kincey@bellsouth.net

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the Second Amended Complaint has been served upon all parties to this civil action by serving each of their attorneys appearing in this civil action and listed below through the CM/ECF court system.

Barbara C. Wells (HIL045)
C. Richard Hill (GIL037)
Blake Edward Brookshire
CAPELL & HOWARD
150 South Perry Street
Montgomery, Alabama 36104

Tabor R. Novak, Jr (NOV001)
Miland Fredrick Simpler, III
BALL BALL MATTHEWS & NOVAK, PA
445 Dexter Avenue Suite 9045
Montgomery, Alabama 36104

Marc James Ayers (ASB-7731-A60M)
Davis S. Vaughan
BRADLEY ARANT BOULT CUMMINGS, PA
One Federal Place
1819 5th Avenue
Birmingham, Alabama 35203

Arnold W. Umbach, III (UMB002)
Walter W. Bates (BAT007)
Madelines Greskovich (GRE147)
STARNES DAVIS FLORIE LLP
100 Brookwood Place #7
Birmingham, Alabama 35203

Brandon K. Essig (ESS001)
Logan T. Mathews (MAT068)
Christine E. Gwinn-Ross
LIGHTFOOT FRANKLIN & WHITE, LLC.
400 20TH Street North
Birmingham, Alabama 35203

Robert D. Segall (SEG003)
COPELAND FRANCO
P. O. Box 347
Montgomery, Alabama 36101-0347

Richard McConnell Freeman, Jr.
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Montgomery, AL 36104-2538

Albry Joe Peddy
Amanda T. Roy
SMITH, SPIRE, PEDDY, HAMILTON, and COLEMAN, PC
2015 Second Avenue North
Suite 200
Birmingham, Alabama 35203

Done this 22nd day of April, 2019.

/s/ B. Kincey Green Jr. (GRE040)
Attorney for Plaintiff

B. Kincey Green Jr.
REEVES & STEWART PC
P. O. Box 447
Selma, Alabama 36702-0447
Telephone 334-875-7236
kincey@bellsouth.net