## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| NORRIS W. GREEN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cv-719-SMD |
| | ) | |
| STATE BOARD OF MEDICAL | ) | |
| EXAMINERS, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Alabama Board of Medical Examiners ("ABME"), Dr. Joseph Falgout ("Falgout"), Dr. Gregory Ayers ("Ayers"), Dr. David Herrick ("Herrick"), Dr. Dick Owens ("Owens"), Dr. Mark LeQuire ("LeQuire"), Dr. Eli Brown ("Brown"), Dr. Beverly Jordan ("Jordan"), Dr. John Meigs ("Meigs"), Dr. Bradley Rice ("Rice"), Dr. Charles Rogers ("Rogers"), and Dr. Gary Leung ("Leung"), (collectively "ABME Board Members"), move this Court to dismiss the Second Amended Complaint.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 8, 2018, Plaintiff brought this wrongful termination case against his former employer, the ABME, some of the members of ABME's governing board, its general counsel, and other defendants. ECF No. 1. On September 6, 2018, this Court granted Defendants' Joint Motion to Extend Responsive Pleading Deadline. ECF No. 44. Plaintiff subsequently filed the First Amended Complaint on September 7, 2018. ECF No. 48. Due to the nature of the First Amended Complaint, Defendants filed a motion for more definite statement which the Court granted. ECF Nos. 55, 56, 73. On April 22, 2019, Plaintiff filed his Second Amended Complaint. ECF No. 74.

Plaintiff's Second Amended Complaint sets forth claims in five counts against various defendants. Of the five counts, Plaintiff alleges a claim under federal law only in one count: Count IV. In this count, Plaintiff demands punitive and compensatory damages from the ABME Board Members in their individual and official capacities pursuant to 42 U.S.C. § 1983 for alleged violations of his procedural due process rights. ECF No. 74 at 25-35. In Count I, Plaintiff alleges a state law breach of implied contract claim against ABME and seeks a jury finding of the existence of a four-year contract and breach "with damages to be determined and awarded by the Alabama Board of Adjustment." ECF No. 74 at 8-11. In Count II, Plaintiff alleges a state law tortious interference with employment claim against the ABME Board Members in their official and individual capacities for compensatory and punitive damages. ECF No. 74 at 11-23. In Count III, Plaintiff alleges a state law invasion of privacy claim against Defendants Falgout, Ayers, Herrick, Owens, LeQuire, Brown, Jordan, Meigs, Rice, Rogers, and Leung in their capacities as members of the Board of Censors of the Medical Association of Alabama, seeking compensatory and punitive damages.[1]  ECF No. 74 at 23-25.  Finally, in Count V, Plaintiff purports to allege a claim for relief against ABME but seeks declaratory and injunctive relief without connecting the requested remedies to a cause of action. ECF No. 74 at 32-33.

Because the Second Amended Complaint alleges little about the nature of ABME, ABME provides the following overview of its role in the State's regulatory apparatus as the investigative and prosecutorial arm of the State with respect to the regulation of the medical profession and other aspects of the parameters of ABME's operations. *See, e.g.,*  Ala. Code §§ 34-24-53 (ABME promulgates rules and regulations governing the practice of medicine), 34-24-56 (licensed medical

---

[1] Count III is not urged against the ABME Board Members in their capacity as members of the ABME Board. To the extent that the Second Amended Complaint could somehow be construed as directing claims against the ABME Board Members, they incorporate by reference as if set forth in this motion all arguments of their co-defendants in support of dismissal of Count III.

providers are required to report information regarding malpractice claims to ABME); 34-24-61 (ABME actions of certifying board for Alabama Uniform Controlled Substance Act); 34-24-70 (ABME examines and qualifies physicians for licenses) 34-24-71 (ABME control of application for examination for admission into the medical profession in Alabama); 34-24-293 (ABME powers and duties with respect to regulation of assistants to physicians); 34-24-360 (ABME investigates violations of rules regarding the practice of medicine); 34-24-361 (ABME institute proceedings); 34-24-363(b) (ABME subpoena power relating to its investigations). ABME is the certifying board under Alabama's Controlled Substances Act and is empowered to issue and revoke registrations to persons for the manufacturing, distributing, or dispensing of controlled substances. *See* Ala. Code §§ 20-2-50, *et seq.* ABME's investigators exercise the police power of the State of Alabama when they perform their duties. Ala. Code § 20-20-90. Alabama law authorizes ABME to collect licensing fees but limits and directs ABME's discretion with respect to expending those funds. Ala. Code §§ 34-24-54; 34-24-312; 34-24-313; 34-24-382. Under the Alabama Sunset Law, which enumerates ABME as a board of the State of Alabama, any funds ABME collects revert to the State Treasury should ABME cease to operate. Ala. Code §§ 41-20-3(a)(5)(j); 41-20-12. Should the Alabama Legislature decide to terminate the ABME's operations under the Alabama Sunset Law, the state Comptroller is authorized to draw warrants on the State Treasury for any outstanding accounts legally owed but unsettled. Ala Code § 41-20-14(b). Alabama law authorizes ABME to "employ such professional, managerial, and clerical staff under such terms, conditions, and personnel policies as the board deems necessary to enable the board to carry out its duties and responsibilities." Ala. Code § 34-24-3111.1.

## **LEGAL STANDARDS**

Challenges to subject matter jurisdiction under Rule 12(b)(1) can exist in two different forms: facial attacks and factual attacks. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). When presented with a facial attack on a plaintiff's complaint, a court determines whether the complaint has sufficiently alleged subject-matter jurisdiction. *Id.* The court proceeds as if it were evaluating a Rule 12(b)(6) motion, views the complaint in the light most favorable to the plaintiff, and accepts any well-pled facts alleged in the complaint as true. *Id.* Factual attacks, on the other hand, question "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). The challenge urged here is a facial attack.

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled facts alleged in the complaint as true; however, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (noting, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). In evaluating the sufficiency of a plaintiff's pleadings, a court can make reasonable inferences in plaintiff's favor, but it is "not required to draw [p]laintiff['s] inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal,* 556 U.S. at 681, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true" (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 127 S. Ct. 1955, (2007)). Indeed, to survive a motion to dismiss, the complaint must contain factual matter, the sufficiency of which states "a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 570. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Simply stated, the "[f]actual allegations must be enough to raise the claim above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I.   Eleventh Amendment Immunity Bars Plaintiff's Claims Against ABME and the ABME Board Members in Their Official Capacities.

The Eleventh Amendment[2] grants immunity and serves as an absolute bar to a suit by an individual against a state or its agencies in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Hans v. Louisiana*, 134 U.S. 1 (1890). It prohibits citizens from extending the judicial power of the United States to bring suit against the state itself without that state's consent. *See, e.g.*, *Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans*, 134 U.S. 1). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Board of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001) (citation omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citation omitted).

As explained above, entities acting as arms of the State share the State's immunity under the Eleventh Amendment. For purposes of Eleventh Amendment immunity, the ABME is an "arm

---

[2]  The Eleventh Amendment to the United States Constitution specifically proclaims that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. CONST. AMEND. 11.

of the State." *See Waltz v. Herlihy*, 682 F. Supp. 501, 503 (S.D. Ala. 1988) (dismissing a complaint against ABME under Eleventh Amendment immunity); *see also Wood v. Jackson Hosp.*, No. 2:17-cv-494-MHT-DAB, 2018 WL 4656422, at *9 (M.D. Ala. Aug. 23, 2018) (R. & R.) (recommending dismissal of a claim against ABME and its employee under Eleventh Amendment immunity) *adopted by Wood v. Jackson Hosp., et al.*, No. 2:17cv494-MHT, 2018 WL 4655740 (M.D. Ala. Sept. 27, 2018).

While a state can consent to suit being brought against it, Alabama has not agreed to be sued for alleged violations of an individual's civil rights. *See* ALA. CONST. ART. I, § 14 (stating "the State of Alabama shall never be made defendant in any court of law or equity."); *see also Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016) (citing this provision of the Alabama Constitution and stating that Alabama has not agreed to be sued for violations of an individual's civil rights); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (finding Article One of the Alabama Constitution of 1901 prohibits the State of Alabama from being able to consent to being sued). Indeed, "Alabama retains a 'nearly impregnable' immunity from suit, and neither the state legislature nor any other state authority can waive it[.]" *Stroud v. McIntosh*, 722 F.3d 1294, 1303 (11th Cir. 2013) (internal citations omitted).

The Congressional abrogation exception to the application of Eleventh Amendment immunity does not apply to Plaintiff's claims pursuant to 42 U.S.C. § 1983. While Congress can abrogate Eleventh Amendment immunity, it did not do so when it enacted 42 U.S.C. § 1983. *See, e.g., Nichols*, 815 F.3d at 731; *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits.").

Plaintiff cannot bring state law claims against ABME in federal court. Absent consent to suit or a Congressional override of a state's immunity, the Eleventh Amendment prohibits a federal court from exercising jurisdiction over a state entity in federal court. *See, e.g., Pennhurst*, 465 U.S. at 97-100, 106 (holding Eleventh Amendment immunity shielded state officials from claims for injunctive relief for alleged violations of state law); *Alyshah v. Georgia*, 239 F. App'x 473, 474 (11th Cir. 2007) (holding district court did not err by granting Georgia's motion to dismiss state law claims against it based on Eleventh Amendment immunity); *Garrett v. Talladega Cty. Drug & Violent Crime Task Force*, 983 F. Supp. 2d 1369, 1376 (N.D. Ala. 2013) (dismissing state law claims for conversion and replevin against a state entity because Eleventh Amendment immunity applies to both state and federal claims); *Hughes v. Ala. Dep't of Pub. Safety*, 994 F. Supp. 1395, 1409 (M.D. Ala. 1998) (applying Eleventh Amendment immunity to bar consideration of state law claims against a state entity); *Kelley v. Troy State Univ.*, 923 F. Supp. 1494, 1502 (M.D. Ala. 1996) (dismissing state law claims against state entity on the basis of Eleventh Amendment immunity). Thus, this Court cannot entertain any of the claims alleged in this action against ABME, an arm of the state of Alabama. Plaintiff's Second Amended Complaint brings two claims directly against ABME: Count I and Count V. The Eleventh Amendment requires this Court to dismiss those claims against ABME.

In addition to the claims he urges directly against ABME, Plaintiff also alleges claims against ABME Board Members in their official capacities. Eleventh Amendment immunity also bars Plaintiff's claims for damages against the ABME Board Members in their official capacities. Claims for damages against the individuals who carry out the work of State government in their official capacity are treated as suits against the governmental entity itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985). This principle recognizes that damages recovered from a

person sued in their official capacity would come from the governmental entity itself and not the official's personal assets. *Id.* "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121. For this reason, the Eleventh Amendment precludes Plaintiff's claims against the ABME Board Members for damages to the extent that those claims are based on actions in their official capacity. *See, e.g., Waltz*, 682 F. Supp. at 503 (applying Eleventh Amendment to preclude plaintiff's claims against individual defendants associated with ABME in their official capacities); *Wood*, 2018 WL 4656422, at *9 (holding that ABME employee sued in his official capacity on behalf of ABME shared the ABME's Eleventh Amendment immunity precluding damages claims against him). Thus, the Court should dismiss all claims against the ABME Board Members in their official capacities whether brought pursuant to state or federal law because the Eleventh Amendment does not allow these claims, all of which seek only damages, to be heard in this Court.

Furthermore, to the extent that Count IV contains allegations against the ABME Board Members in their official capacity for damages, the claim fails as a matter of law.  Section 1983 provides a limited remedy when a "person" acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States. *See, e.g.,* 42 U.S.C. § 1983.[3] While § 1983 authorizes suit against a person acting under color of

---

[3]  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

state law, the Supreme Court has held that a state official sued in his or her official capacities for monetary damages is not a "person" under § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). For this additional reason, the dismissal of Plaintiff's Count IV claims against the ABME Board Members in their official capacities for damages must be dismissed as they do not meet the definition of a "person" within that statute.

## II. Qualified Immunity Protects the ABME Board Members from Plaintiff's § 1983 Claims for Damages in Their Individual Capacities.

Count IV of the Second Amended Complaint seeks damages against the ABME Board Members in their individual capacities, but qualified immunity requires the dismissal of these claims. The long-recognized doctrine of qualified immunity protects government officers when they are sued in their individual capacities from liability for civil damages so long as the conduct in which they engaged did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity serves the public interest because it allows government officials to carry out their discretionary duties "without the fear of personal liability or harassing litigation, . . . protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). A court called upon to analyze a question of the applicability of the qualified immunity doctrine must inquire into "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotation marks and citations omitted); *see Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." (internal quotation marks and citation omitted)).

9

A public official seeking the protection of qualified immunity "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (internal quotation marks and citation omitted). Courts examining whether a public official was acting within the scope of his discretionary authority focus on whether the acts in question are of a type that fall within the employee's job responsibilities. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). A court should ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize . . . ." *Id.* (citation omitted).

The ABME Board Members had supervisory authority over Plaintiff when he served as an ABME employee sufficient to establish that the actions which they allegedly took were within their discretionary authority. A government official who possesses supervisory authority over the employee-plaintiff who is sued for personnel decisions, including administration of discipline to that employee, acts within the scope of discretionary authority for purposes of the first step of the qualified immunity analysis. *See, e.g., Sims v. Metro. Dade Cty.*, 972 F.2d 1230, 1236 (11th Cir. 1992). *Accord*, *Cooper v. Smith*, 89 F.3d 761, 763-64 (11th Cir. 1996) (terminating employee is a discretionary function). Under Alabama law, "[t]he State Board of Medical Examiners may employ such professional, managerial, and clerical staff under such terms, conditions, and personnel policies as the board deems necessary to enable the board to carry out its duties and responsibilities." Ala. Code § 34-24-311.1. The Alabama Administrative Code further elaborates that the "Board shall employ a qualified individual to serve as Executive Director, whose duties, responsibilities and compensation shall be set by the Board." Ala. Admin. Code r.540-x-1-.04 (2015). Additionally, Plaintiff himself alleges that his claim is based on their discretionary actions. ECF No. 74 at 30. Because the ABME Board Members acted within the scope of their discretionary

supervisory authority with respect to the acts challenged as violating Plaintiff's constitutional rights, the burden shifts to Plaintiff to show that qualified immunity is not appropriate. *Lee*, 284 F.3d at 1194.

Once determined that the officers acted within their discretionary authority, courts use a two-part test to determine whether qualified immunity is proper. In *Saucier v. Katz*, the Supreme Court directed courts to use the following two-part test to determine whether qualified immunity applies:  first, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, the Court has abandoned the rigid order of analysis enunciated in *Saucier* and stated that courts are no longer required to first determine whether there was a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

> On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson*, 129 S. Ct. at 818. Here qualified immunity applies both because the allegations do not state a claim of a constitutional violation and because the alleged violation as claimed was not clearly established at the time the ABME Board Members are alleged to have acted.

Plaintiff's allegations in Count IV focus on the ways he believes the process was insufficient but fail to include facts supporting a finding of a constitutionally protected interest. "A Section 1983 procedural due process claim requires a plaintiff to prove three elements: '(1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th

Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). If a governmental employee has no property interest in his continued employment with the governmental entity, he is not entitled to procedural due process. *See, e.g. Price v. Univ. of Ala.*, 318 F. Supp. 2d 1084, 1090 (N.D. Ala. 2003), *aff'd* No. 03-15511, 2004 WL 1253201, at *2-*3 (11th Cir. 2004). Plaintiff alleged nothing in Count IV that would support a finding that he had a constitutionally protected liberty or property interest. For this reason, Count IV fails to state a claim for which relief can be granted.

Assuming *arguendo* that the Court allows Plaintiff to argue the "implied contract" alleged in Count I as a basis for his procedural due process claim, Count IV is still deficient. The well-pleaded factual allegations of the complaint even viewed in the light most favorable to Plaintiff compel a conclusion that the Statute of Frauds applies to prevent a property interest from vesting in Plaintiff and that supports a basis for finding that due process was not required. Plaintiff alleges that the former Executive Director of ABME communicated to him an offer of employment as Associate Executive Director for a minimum duration of four years with an "expectancy of eventually becoming Executive Director." ECF No. 74 at 8. Plaintiff does not allege that any writing supported this offer.

An oral promise for employment of the duration alleged fails to create an enforceable contract. The Alabama Statute of Frauds requires that "every agreement which, by its terms, is not to be performed within one year from the making thereof" is void unless it is evidenced by a writing. *See, e.g.,* Ala. Code § 8-9-2 (1975); *Trum v. Melvin Pierce Marine Coating, Inc.*, 562 So.

2d 235, 236 (Ala. 1990) (holding that statute of frauds precluded the claim of a plaintiff who sued on an oral employment contract for four-year period alleging breach of that contract through termination prior to the expiration of the four-year period); *Selby v. Quartrol Corp.*, 514 So. 2d 1294, 1295-96 (Ala. 1987) (holding that oral discussions of a contract of employment for at least three years without a writing violated the statute of frauds and cannot form the basis for an enforceable employment contract). Because the alleged employment contract was void under the Alabama Statute of Frauds, Plaintiff has no constitutional property right in his employment and dismissal of his procedural due process claim is warranted on the basis of qualified immunity. *See Price*, 318 F. Supp. 2d at 1090 (dismissing procedural due process claim against state official in his individual capacity on the basis of qualified immunity because employee did not have a property interest in his employment because his agreement was not reduced to writing and signed as the Alabama Statute of Fraud requires and because his right to due process could not be said to be clearly established). Indeed, even partial performance under an agreement and the entity's failure to dispute its existence does not provide an employee with a constitutional property right in such a contract because it was void under Alabama law. *See, Price*, 2004 WL 1253201, at *3 (affirming dismissal on the basis of qualified immunity as to claims against state official in his individual capacity).

Further, assuming the facts as alleged in the Second Amended Complaint are true, Plaintiff had no property interest in his employment in the Executive Director position because his employment in that position was at-will. Alabama law and policy firmly establish that Alabama is an at-will employment state. *See Ex parte Amoco Fabrics & Fiber Co.*, 729 So. 2d 336, 339 (Ala. 1998) ("The bedrock principle of Alabama employment law is that, in the absence of a contract providing otherwise, employment in this state is at-will, terminable at the will of either party.

13

Under this doctrine, an employee may be discharged for any reason, good or bad, or even for no reason at all."); *see also LeFleur v. Hugine*, 587 F. App'x 536, 541-42 (11th Cir. 2014) ("Employment in Alabama is terminable at will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration. At will employment may be terminated with or without cause or justification, and employees bear a heavy burden of proof to establish that an employment relationship is other than at will." (citations and quotations omitted)); *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1355 (M.D. Ala. 1999) ("Under Alabama law, a state employee must demonstrate that his employment is 'permanent' or terminable only for cause to demonstrate a constitutionally cognizable property interest." (citing *Green v. City of Hamilton Housing Auth.*, 937 F.2d 1561, 1564 (11th Cir. 1991))).

According to the allegations of the Second Amended Complaint, Plaintiff makes no claim to an express employment contract, but instead asserts he had an implied contract. The allegations in support of that contention, however, fall short of creating the factual predicate for finding an implied contract for purposes of supporting a constitutionally cognizable property interest. Plaintiff alleges that the offer he accepted was for a minimum four-year duration, but he alleges that position he accepted for that term and salary and benefits was the Associate Executive Director position. ECF No. 74 at 8. Plaintiff acknowledges that he left the position of Associate Executive Director after less than two years—without penalty—to accept a position as Executive Director. ECF No. 74 at 9. The Second Amended Complaint is devoid of any allegation regarding any offer from ABME to Plaintiff that would arguably constitute a clear and unequivocal offer of employment for a definite duration in that new position of Executive Director. Accordingly, Plaintiff has failed to allege that he was given a clear and unequivocal offer of lifetime employment or employment of definite duration in the position of Executive Director to overcome the

14

presumption that he was an at-will employee after he changes positions. Plaintiff cannot now claim a property interest in his employment as Executive Director arising from some expectation he had based on alleged promises relating to his term of service in another position. This is the kind of unilateral expectation of continued employment to which due process protections do not attach.

In the alternative, even if the Court finds some basis for Plaintiff to enjoy a property interest in his employment as alleged in the Second Amended Complaint, dismissal is still appropriate because he received constitutionally adequate notice and an opportunity to be heard prior to being asked to resign or face dismissal for cause. While Plaintiff alleges a very specific list of protections he contends constitute adequate pre-dismissal procedural due process, they far exceed what is required for pre-dismissal notice. All that is required is an "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546. "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id*. Plaintiff's own allegations reveal that he received notice that employees in the legal division had complained about problems with his behavior, his favoritism toward another employee, and his going around the legal division. ECF No. 74 at 16. Furthermore, Plaintiff received notice from Defendant LeQuire that members of the legal division were considering quitting or bringing suit. *Id.* Plaintiff alleges he asked these members of the legal division to meet with him and one expressed she was never going to meet with Plaintiff alone in a room again. ECF No. 74 at 17. Plaintiff asked why the employees had talked to Defendant LeQuire about a problem without mentioning it to Plaintiff. *Id.* Plaintiff and the members of the legal division disagreed about whether the legal division reported to Plaintiff or to the members of the Board and Plaintiff regarding the conduct of Defendant Eric Wilson Hunter ("Hunter") and

Defendant Patricia Shaner ("Shaner") as insubordination justifying their dismissal. ECF No. 74 at 17-18. If nothing else, these discussions put Plaintiff on notice that his working relationship with Defendants Hunter and Shaner had disintegrated. By September 18, 2017, Plaintiff alleges he could tell that Defendants Falgout and LeQuire were defending Defendants Hunter and Shaner. ECF No. 74 at 20-21. On September 20, 2017, Plaintiff was invited to address the members of the ABME Board without limitation as to topics and afforded the opportunity to be heard about the situation regarding his issues with Defendants Hunter and Shaner. ECF No. 74 at 28.

In sum, qualified immunity shields the ABME Board Members in their individual capacities from Plaintiff's claims pursuant to 42 U.S.C. § 1983 and requires dismissal of those claims. Plaintiff cannot point to an authority which could have clearly established he was entitled to more process than he received or otherwise justify depriving these defendants from qualified immunity because he received constitutionally adequate notice and an opportunity to be heard.

### III.   Plaintiff's State Law Claims All Fail as A Matter of Law as They Fail to State A Claim Upon Which Relief Can Be Granted.

In addition to Plaintiff's failure to state a plausible claim under § 1983 and the previously addressed immunity issues, the Plaintiff's state law claims fail to state a plausible claim and, therefore, should be dismissed. Count I of the Plaintiff's Second Amended Complaint fails to set forth a contract that satisfies the Statute of Frauds and, even assuming the contract is valid, was completed when Plaintiff was promoted to Executive Director. Count II fails to plead facts that would entitle Plaintiff to relief under a tortious interference claim. Count III makes no allegations against ABME or the ABME Board Members, however, to the extent the claim could be construed as asserting claims, the ABME Board Members adopt and incorporate the arguments made by its co-defendants: MASA, Harrison, Shaner, and Hunter.

### A. *Plaintiff's Breach of Contract Claim Fails as a Matter of Law Because the Statute of Frauds Voids Oral Contracts Incapable of Being Performed Within One Year.*

Plaintiff's claim for relief against ABME under a breach of implied contract theory fails because his own pleadings fail to allege an enforceable writing evidencing the contract. In fact, the nature of Plaintiff's implied contract count necessarily concedes there is no writing evidencing a contract between the parties. As previously noted, the Alabama Statute of Frauds states "[e]very agreement which, by its terms, is not to be performed within one year from the making thereof" is void unless it is evidenced in writing and signed by the party enforcement is sought against. Ala. Code § 8-9-2. Alabama's Statute of Frauds codifies a long standing, well-known legal principle. For an oral contract to be valid despite the Statute of Frauds, it must be either (1) an executed contract; or (2) "an executory contract subject to a reasonable possibility of performance within one year." *Trum v. Melvin Pierce Marine Coating, Inc.*, 562 So. 2d 235, 236 (Ala. 1990).

The Alabama Supreme Court confirmed the Statute of Frauds applies to oral contracts for more than a year in the employment context. *Id.* at 236-37. In *Trum*, a plaintiff sought damages for breach of an oral contract that guaranteed him employment with the defendant for at least four years. *Id.* at 236. The trial court granted the defendants' motions for summary judgment. *Id.* In affirming the trial court's decision on the contract claim, the Supreme Court of Alabama stated:

> In the present case, the plaintiff alleged, and the undisputed evidence showed, that there was no writing evidencing the terms of his employment. The plaintiff stated in his affidavit submitted in opposition to the motion for summary judgment that he had entered into an agreement with the defendants whereby he was to be employed for a period of four years. *By his own admission, the plaintiff brought suit on an oral, executory contract that was incapable of performance under its terms within one year. . . .* The summary judgment on the contract claim was proper.

17

*Id.* at 236-37 (emphasis added). Plaintiff's Second Amended Complaint makes similar fatal allegations. Plaintiff alleges no writing evidencing the alleged contract, which clearly by its alleged terms requires at least four years to complete.

Therefore, this Court should dismiss Count I, the Plaintiff's breach of implied contract claim, for failure to state a claim.

### B. The Plaintiff's Implied Contract For A Definite Period Fails As A Matter of Law.[4]

 Even assuming Plaintiff's allegation is correct that "the former Executive Director of the State Board of Medical Examiners extended a specific offer to the Plaintiff . . . [to] accept a new job as Associate Executive Director of the [ABME] for four (4) years," ECF No. 74 at 8, and that the Statute of Frauds somehow does not apply, the Plaintiff had nothing more than a mere expectancy in continued employment as the Executive Director. *See Moulthrop v. Hyett*, 105 Ala. 493, 495 (Ala. 1895) (stating that a mere expectancy is an insufficient basis to award damages). As previously stated, Alabama law presumes an employee is an at-will employee "unless there is an express and specific contract for lifetime employment or employment for a specific duration." *LeFleur*, 587 F. App'x at 541-42. Even if the former Executive Director's alleged comments constitute an "express and specific contract" for the position of Associate Executive Director, Plaintiff terminated this "contract" when he accepted the position as Executive Director. Plaintiff does not allege that he had any implied contract of any particular term in the position of Executive Director.

Once Plaintiff left the position of Associate Executive Director, he became an at-will employee in the position of Executive Director. As such, he was capable of being fired for "any reason, good or bad, or even for no reason at all," *Ex parte Amoco Fabrics & Fiber Co.*, 729 So.

---

[4] This section assumes—without agreement—that Plaintiff's allegation of an implied contract for the Associate Executive Director Position is enforceable.

2d at 339. Here, Plaintiff completed the alleged contract and/or waived any rights under the alleged contract at the time he left his position as Associate Executive Director and accepted the position as Executive Director. That is, accepting Plaintiff's allegations as true, the only representation related to duration of employment with ABME relates to his employment as Associate Executive Director. *See* ECF No. 74 at 8. Plaintiff makes no allegations that this term of employment was represented to carry over into his employment as Executive Director. Any additional contract for employment must be based on additional oral[5] or written representations to constitute anything other than at-will employment, *see Echols*, 2010 WL 11561201, at *11, which Plaintiff has not alleged.

While Plaintiff may argue the alleged contract contemplated his promotion to Executive Director, the allegations Second Amended Complaint do not support this assertion. In Count I of the Second Amended Complaint, the Plaintiff pleads:

> In January 2015, the former Executive Director of the State Board of Medical Examiners extended a specific offer to the Plaintiff to leave his job as Director of the Legislative Fiscal Office where he had been employed for the previous 39 years, and accept a new job as Associate Executive Director of the State Board of Medical Examiners for four (4) years with *the expectancy of eventually* becoming Executive Director.

ECF No. 74 at 8 (*emphasis added*). Assuming all facts in Plaintiff's favor, this allegation is insufficient to constitute the specific terms with respect to any position other than Associate Executive Director. "While [Alabama] law does not favor the discharge of contracts because of uncertainty, yet, when they are so vague and indefinite in their terms that the damages flowing from a breach cannot be ascertained, the courts will not undertake to give them effect." *Christie, Lowe & Heyworth v. Patton*, 148 Ala. 324, 326 (Ala. 1906). At best, the alleged contract invites

---

[5] As stated, the only oral representation that could form a contract for employment is an offer of lifetime employment. *Green*, 937 F.2d at 1563-64.

two interpretations as to the position of Executive Director, neither of which are favorable to Plaintiff. First, the alleged contract *may* refer to the fact that Plaintiff would become Executive Director. In this sense, the contract was completed the moment Plaintiff became Executive Director and Plaintiff alleges no specific reference to the duration of his employment as Executive Director, aside from the conclusory allegations referenced above. The second, and more likely result, is the "expectancy of *eventually* becoming Executive Director" is so vague and indefinite as to be unenforceable.[6] Thus, like the first interpretation, Plaintiff's failure to plead a specific duration of his employment as Executive Director is fatal to this claim.

Therefore, Plaintiff's claim for relief as an implied contract fails as a matter of law and this Court should dismiss Counts I.

### C.  Plaintiff's Tortious Interference with Employment Claim Fails to State a Plausible Claim Against the ABME Board Members.

Plaintiff cannot state a plausible tortious interference with employment claim against the ABME Board Members upon which relief can be granted because they were not strangers to the relationship with which they purportedly interfered. "Under Alabama law, the essential elements of the tort of intentional interference with contractual or business relations are: (1) the existence of a protectable business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Golloway v. Bd. of Trs. of Auburn Univ*., No. 3:16-CV-375-WKW, 2017 WL 4011020, at *2 (M.D. Ala. Sept. 12, 2017) (quoting *Ex parte Hugine*, 256 So. 3d 30 (Ala. 2017)) (internal quotations omitted). "A party is not a stranger to a business relationship if he or she has any beneficial or economic interest, or control over, the relationship." *Hand v. Univ. of Ala. Bd. of Trs.*, 304 F. Supp. 3d 1173,

---

[6] Notably, this same reasoning prevents the entire alleged "contract" from being enforceable under state law. Alabama requires a clear and unequivocal offer to form a contract.

1184 (N.D. Ala. 2018) (quoting *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004)) (internal quotations omitted).  It is clear that "[w]hen the defendant is an essential party to the allegedly injured business relationship, the defendant is a participant in that relationship instead of a stranger to it." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1302 (11th Cir. 2010) (citations omitted). Further, "because a breach of a contract does not give rise to an action for the tort of intentional interference with business or contractual relations, a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract." *Lolley v. Howell,* 504 So. 2d 253, 255-56 (Ala. 1987) (citations omitted).  Plaintiff alleges in the Second Amended Complaint that he had an implied employment contract with ABME. ECF No. 74 at 8-11. Assuming those allegations are true, as required for the purposes of this motion, the ABME Board Members in their official capacities were parties, not strangers, to the contractual or business relationship and therefore cannot be liable for tortious interference with that relationship. *See Lolley,* 504 So. 2d at 255. Accordingly, Plaintiff's claim for tortious interference with employment must fail against ABME and the ABME Board Members in their official capacities, and the claim should be dismissed against them.

Moreover, assuming *arguendo* that the ABME Board Members in their individual capacities were not parties to the purported employment contract with Plaintiff, his claim for tortious interference with employment claim against them also fails. Alabama law permits a plaintiff to maintain a claim of interference with business relations against an individual officer with regard to business or contractual relations to which their corporation is a party. *See Perlman v. Shurett*, 567 So. 2d 1296, 1297 (Ala. 1990) ("[C]orporate officers or employees may individually commit the tort of intentional interference with business or contractual relations to which their corporation or employer is a party." (alteration in original) (internal quotations and

citation omitted)). However, a plaintiff can only state a plausible intentional interference claim in that context, "if he shows that the defendants acted outside their scope of employment and did so maliciously." *Golloway*, 2017 WL 4011020, at *2 (internal quotations and citation omitted). "An action outside of the scope of employment, in this context, is the same as an action outside of the employee's scope of authority." *Id*. (citing *McGlathery v. Ala. A&M Univ.*, 105 So. 3d 437, 447 (Ala. Civ. App. 2012)). "Since an action for tortious interference will not lie against an employee or officer for conduct within the general range of his authority which he exercises for the benefit of the employer, . . . , [an officer] will be subject to liability only if he abandons his employer's business in a 'very marked and unusual' manner." *Morrow v. Auburn Univ.*, 973 F. Supp. 1392, 1410 (M.D. Ala. 1997) (internal citations omitted).   "A plaintiff may show the defendant employee's conduct sufficiently deviated from the scope of his authority by demonstrating that the employee played a direct role in interfering with plaintiff's business relation and acted in such a manner in order to obtain a personal benefit." *Id*. (citing *Pegram v. Hebding*, 667 So. 2d 696, 701-702 (Ala. 1995)). Further, "in order to show malice the plaintiff must make a strong showing of a pattern of interference, which requires more than an isolated incident of actions beyond the scope of the defendant's employment." *Golloway*,  2017 WL 4011020, at *2  (quoting *McGlathery v. Ala. A&M Univ.*, 105 So. 3d 437, 447 (Ala. Civ. App. 2012)).

Here, assuming the factual allegations in the Second Amended Complaint are true, the facts as alleged are insufficient to state a plausible claim of tortious interference with employment against the ABME Board Members in their individual capacities because it fails to allege that they acted outside the scope of their employment and with malice. Plaintiff alleges the ABME "is the only one authorized to dismiss employees" and complains that the ABME Board Members "participated in a monthly meeting of the Board of Censors on the morning of September 20,

2017," "actively participated in his termination," and "engaged in deliberations and or discussions on September 20, 2017, in support of his dismissal."  ECF No. 74 at 7, 19, 21.  Those allegations certainly do not specify any conduct of the ABME Board Members that are outside their scope of employment as that scope is factually described in the Second Amended Complaint.  The rest of Plaintiff's complaints involve purported actions taken by Defendants Harrison, Shaner and Hunter, but do not involve any actions committed by the ABME Board Members that were beyond their ABME duties. ECF No. 74 at 11-22. Indeed, no allegations in the Second Amended Complaint specify how or when the ABME Board Members acted outside the scope of their employment as they had the authority to dismiss employees.[7]  Further, Plaintiff has not alleged nor indicated that the ABME Board Members instituted a pattern of interference that was outside their scope of employment, such as repeatedly spreading fabrications about Plaintiff to his colleagues. *Cf. Golloway*, 2017 WL 4011020, at *3 (denying a Rule 12(b)(6) dismissal of a tortious interference claim where the plaintiff alleged that the defendants maneuvered to have the plaintiff terminated by Auburn University, his employer). Plaintiff also has not alleged that the ABME Board Members "acted in such a manner in order to obtain a personal benefit."  *Morrow*, 973 F. Supp. at 1410 (citing *Pegram*, 667 So. 2d at 701-702). Accordingly, Plaintiff fails to allege a plausible claim

---

[7] *See* ECF No. 74 at 16 (alleging Defendant LeQuire had a conversation with Plaintiff on "September 13, 2017 . . . [which] was the customary monthly meeting date with Defendant LeQuire to go over upcoming items on the agenda for the monthly [ABME] board meeting in one week"); *Id.* at 16 (alleging Defendant LeQuire had a conversation with Plaintiff regarding Defendant Hunter); *Id.* at 16 (alleging Plaintiff had another conversation with Defendant LeQuire where Plaintiff complained about insubordination from Defendants Shaner and Hunter, and Defendant LeQuire agreed with Plaintiff); *Id.* at 20 (alleging Plaintiff met with Defendants Falgout and LeQuire because it was "[t]he customary day for the Executive Director to review the schedule for the upcoming Credential Committee meeting with the Board Chairman and Board Vice-Chairman" and "as the meeting concluded Defendants Falgout and LeQuire were now defending Defendants Shaner and Hunter"); *Id.* at 21 (alleging after a "[r]outine meeting of the Credentials Committee" that Defendant LeQuire asked Plaintiff how he "was going to be able to pay for the new house [he] has recently purchased"); *Id.* at 21 (alleging the ABME conducted their meeting and then went "into an unrecorded executive session" where purported false statements from Defendants Shaner, Hunter and Harrison "were shared with members of the [ABME]" and were "presented as true" by Defendants Falgout and LeQuire).

against the ABME Board Members in their individual capacities for tortious interference with employment and thus this claim against them should be dismissed.

In sum, for the reasons discussed above, Plaintiff's claims for tortious interference against the ABME Board Members are due to be dismissed.

## IV.     The ABME Board Members Are Entitled to State Agent Immunity Under *Cranman*.

The ABME Board Members are entitled to state agent immunity on all Plaintiff's state law claims. State-Agent immunity as outlined in *Ex parte Cranman* and its progeny shields the ABME Board Members from liability for claims pursuant to Alabama law. In *Cranman*, the Supreme Court of Alabama enunciated the rule governing State-agent immunity as follows:

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
> (1) formulating plans, policies, or designs; or
> (2) exercising his or her *judgment in the administration of a department or agency* of government, including, but not limited to, examples such as:
> (a) making administrative adjudications;
> (b) allocating resources;
> (c) negotiating contracts;
> (d) hiring, firing, transferring, assigning, or supervising personnel; or
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
> . . .
> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise, or
>> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

792 So. 2d 392, 405 (2000) (emphasis added); s*ee also, Ex parte Randall*, 971 So. 2d 652, 662

(Ala. 2007) ("Although *Cranman* was a plurality decision, the restatement of law as it pertains to

State-agent immunity set forth in *Cranman* was subsequently adopted by this Court's decisions in

*Ex parte Rizk*, 791 So. 2d 911 (Ala. 2000), & *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000).").

In *Ex parte Estate of Reynolds*, the Supreme Court of Alabama outlined the proper analysis

for a claim of state-agent immunity under *Cranman*:

> This Court has established a "burden-shifting" process when a party
> raises the defense of State-agent immunity. *Giambrone v. Douglas*,
> 874 So. 2d 1046, 1052 (Ala. 2003).  In order to claim State-agent
> immunity, a State agent bears the burden of demonstrating that the
> plaintiff's claims arise from a function that would entitle the State
> agent to immunity. *Giambrone*, 874 So. 2d at 1052; *Ex parte Wood*,
> 852 So. 2d 705, 709 (Ala. 2002).  If the State agent makes such a
> showing, the burden then shifts to the plaintiff to show that the State
> agent acted willfully, maliciously, fraudulently, in bad faith, or
> beyond his or her authority. *Giambrone*, 874 So. 2d at 1052; *Wood*,
> 852 So. 2d at 709; *Ex parte Davis*, 721 So. 2d 685, 689 (Ala. 1998)
> "A State agent acts beyond authority and is therefore not immune
> when he or she 'fail[s] to discharge duties pursuant to detailed rules
> or regulations, such as those stated on a checklist.'" *Giambrone*, 874
> So. 2d at 1052 (quoting *Ex parte Butts*, 775 So. 2d 173, 178 (Ala.
> 2000)).

946 So. 2d 450, 452 (Ala. 2006).

Here, the ABME Board Members were acting in a discretionary function that would entitle

them to State-agent immunity. The members were acting as members of the ABME when they

made a supervisory decision to offer Plaintiff the choice between resignation and dismissal for

cause.  *See id*. ("a state agent shall be immune from civil liability in . . . exercising his . . . judgment

in the administration of a department or agency of government, including, but not limited to,

examples such as . . . firing . . . *personnel*." (emphasis added)); *Ex parte Hugine*, 256 So. 3d 30,

59 (Ala. 2017) (holding university employees were entitled to State-agent immunity in firing an

employee of the state). Accordingly, because the facts as alleged in the Second Amended Complaint show that the ABME Board Members were acting in a discretionary function, they are entitled to State-agent immunity.

Further, Plaintiff has failed to allege facts that plausibly establish that the ABME Board Members acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of law. This Court should disregard Plaintiff's conclusory allegations that the ABME Board Members acted maliciously because he fails to allege any underlying facts supporting these conclusions. *Iqbal*, 556 U.S. at 686 ("the Federal Rules does not require courts to credit a complaint's conclusory statements without reference to its factual context."); *Twombly*, 550 U.S. at 570. For example, in his Statement of the Case, Plaintiff claims that the ABME Board Members engaged in a conspiracy to "maliciously . . . cause[] the forced and constructive dismissal of the Plaintiff from his position as Executive Director . . . ." ECF No. 74 at 2. Plaintiff's Second Amended Complaint contains only conclusory allegations in his Statement of the Case and introduction of the Parties that the ABME Board Members engaged in a malicious conspiracy to oust him. Defying this Court's April 5, 2019 Order, no such allegations are made in the required clear indication of "which specific factual allegations are material to each specific count." ECF No. 73 at 7. Accordingly, the ABME Board Members are entitled to State-agent immunity because Plaintiff has not alleged facts establishing that their conduct fell within any of the exceptions outlined in *Cranman*.

## V.     Plaintiff Does Not Have Standing to Seek the Declaratory and Injunctive Relief He Demands in Count V Against ABME.

Count V in the Second Amended Complaint fails because Plaintiff lacks standing to assert a claim for declaratory and injunctive relief. Because he seeks to invoke this Court's jurisdiction, Plaintiff bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

561 (1992); *see also Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, (11th Cir. 2016).  There are three requirements for a plaintiff to have standing in federal court. First, "the plaintiff must have suffered an 'injury in fact[.]'" *United States v. Hayes*, 515 U.S. 737, 743 (1995) (citation omitted); *see Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 102-03 (1998) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)) (referring to standing as a "irreducible constitutional minimum"); *Lively v. Ala. State Bar*, 2012 WL 7761567, at *5 (M.D. Ala. Dec. 10, 2012). This injury cannot be "conjectural or hypothetical" but, instead, must be "concrete and particularized" and "actual or imminent." *Hayes*, 515 U.S. at 743. Second, the plaintiff must establish a "causal connection between the injury and the conduct complaint of" in the complaint. *Id.* Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*.

Plaintiff cannot meet this standard because the only alleged injury in Count V of the Second Amended Complaint is entirely and wholly speculative. Plaintiff asks this Court to "declare the interpretation" of several Alabama Statutes, Constitutional Provisions, and Executive Orders, but Plaintiff's only statement on potential future injury is "so that future Executive Directors won't have to risk his/her job status by confronting Board members with the illegal practices." ECF No. 74 at 32-33. Notably, Plaintiff does not attempt to relate Count V to any of the claims previously alleged. The demand for these remedies stands apart from any claim for relief and is unconnected to them.[8] Instead, Plaintiff provides a wholly speculative injury to someone other than him that does not meet the "concrete and particularized" standard previously set forth. Count V fails on this ground alone.

---

[8] This further makes it difficult to discern whether Count V is brought pursuant to state law or federal law.

Nonetheless, assuming *arguendo* Plaintiff relates Count V to his other claims, the requested relief will not redress the injury identified in those claims. Otherwise stated, even if this Court holds in Plaintiff's favor on all requested relief in Count V, it will have no effect on him personally. Instead, the Plaintiff seeks relief for other future hypothetical plaintiffs, which is insufficient to satisfy Article III's standing requirement. There are no set of facts alleged in Count V that would entitle Plaintiff to any relief, therefore, Count V should be dismissed.

In addition to general standing to bring an action in federal court, Plaintiff lacks standing to bring an action for declaratory and injunctive relief. A plaintiff seeking declaratory or injunctive relief must show "a real and immediate threat of future injury" by showing "a sufficient likelihood that *he* will be affected by the unlawful conduct in the future." *See Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (emphasis added); *Coccaro*, 648 F. App'x at 879 (citing *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014)). Plaintiff's Second Amended Complaint wholly fails to address this requirement. Not only does Plaintiff fail to address whether there is a future likelihood to *anyone*, Plaintiff fails to address how any future alleged illegal conduct would injure him personally. Without a concrete and particularized articulation of how Plaintiff could be injured in the future, his claim for declaratory and injunctive relief cannot succeed. *Id.*[9] Defendants, and this Court, are left to speculate as to who could possibly be injured by future conduct, but as the Second Amended Complaint shows, Plaintiff is not at risk of future injury.

For these reasons, this Court should dismiss Count V of the Second Amended Complaint.

---

[9] For a collection of cases, see *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991).

## CONCLUSION

For these reasons, ABME and the ABME Board Members respectfully submit that the claims against them in the Second Amended Complaint are due to be dismissed.

Consistent with the Middle District of Alabama's Administrative Procedure for Filing, Signing, and Verifying Pleadings and Documents in the District Court under the CM/ECF System, the filing attorney certifies that all signatories to this document agree to its filing.

Respectfully submitted this 13th day of May, 2019.

/s/ Barbara J. Wells
**BARBARA J. WELLS (GIL037)**
**C. RICHARD HILL, JR. (HIL045)**
**JERUSHA T. ADAMS (ASB-5895-S54S)**
**BLAKE BROOKSHIRE (BRO313)**

**OF COUNSEL:**
**CAPELL & HOWARD, P.C.**
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 323-8888
Email: Barbara.Wells@chlaw.com
Email: Rick.Hill@chlaw.com
Email: Jerusha.Adams@chlaw.com
Email: Blake.Brookshire@chlaw.com

/s/ Tabor R. Novak, Jr.
**TABOR R. NOVAK, JR. (NOV001)**
**MILAND F. SIMPLER, III (SIM103)**
*Attorneys for State Board of Medical Examiners, Drs. LeQuire, Brown, Jordan, Meigs, Rice, Rogers, Falgout, Ayers, Herrick, Leung, and Owens*

**OF COUNSEL:**
**BALL BALL MATTHEWS & NOVAK, PA**
445 Dexter Avenue Suite 9045
Montgomery, Alabama 36104
Telephone:  (334) 387-7680
Facsimile:   (334) 387-3222
Email: tnovak@ball-ball.com
Email: msimpler@ball-ball.com

29

## CERTIFICATE OF SERVICE

On May 13, 2019, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record listed below:

B. Kincey Green Jr.
Reeves & Stewart PC
PO Box 447
Selma, AL 36072-0447
Email: Kincey@bellsouth.net

Arnold W. Umbach, III
Walter William (Billy) Bates
Madeleine Greskovich
Starnes Davis Florie LLP
100 Brookwood Place #7
Birmingham, Alabama  35209
Email: tumbach@starneslaw.com
   wbates@starneslaw.com
   mgreskovich@starneslaw.com

Marc James Ayers
Davis S. Vaughn
Bradley Arant Boult Cummings LLP
One Federal Place
1819 5th Avenue North
Birmingham, Alabama  35203
Telephone:  (205) 521-8598
Facsimile:   (205) 488-6598
Email:  mayers@bradley.com
Email:  dvaughn@bradley.com

Brandon K. Essig
Logan T. Matthews
Lightfoot Franklin & White LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone: (205) 581-0738
Facsimile: (205) 581-0799
Email: bessig@lightfootlaw.com
Email: lmatthews@lightfootlaw.com

R. Mac Freeman Jr.
Rushton Stakely
184 Commerce Street
Montgomery, AL 36104
Telephone: (334) 206-3114
Facsimile: (334) 481-0807
Email: RMF@rushtonstakely.com

Robert D. Segall
Copeland Franco Screws & Gill
P.O. Box 347
Montgomery, Alabama  36101-0347
Telephone: (334) 834-1180
Facsimile: (334) 834-3172
Email: segall@copelandfranco.com

Joe Peddy
Smith, Spire, Peddy, Hamilton & Coleman, P.C.
2015 Second Avenue North – Suite 2000
Birmingham, Alabama 35203
Telephone: (20) 251-5885
Email: Joe@ssp-law.com

/s/ Barbara J. Wells
Of Counsel